## COURT OF APPEALS.

### July 12, 1922.

## THE PEOPLE v. ANIELLO PARRETTI.

### (234 N. Y. 98.)

MURDER—CONVICTION OF DEFENDANT INDICTED WITH THREE OTHERS FOR THE CRIME OF MURDER IN THE FIRST DEGREE AS CONSPIRATORS WHO CAUSED THE DEATH OF ANOTHER BY CRIMINAL MEANS—EVIDENCE—WHEN CORROBORATION OF TESTIMONY OF CODEFENDANT AND ACCOMPLICE OF DEFENDANT INSUFFICIENT TO SUSTAIN VERDICT CONVICTING DEFENDANT—ERRONEOUS CHARGE BY TRIAL JUSTICE.

Upon the trial of a defendant indicted with three others for the crime of murder in the first degree as conspirators, members of a gang, who caused the death of another by criminal means, the evidence, which tended to establish the guilt of defendant, was the testimony of one of the defendants, and a witness whom the court held was an accomplice, both of whom at the time of the trial were serving terms in State prison and admitted that they had committed or aided in the commission of other murders. The defendant as a witness upon the trial denied that he was a member of the gang, that he was a party to the conspiracy to kill deceased,

that he had knowledge of the same or in any manner participated in causing the death of deceased or had theretofore been charged with the commission of crime. In order to meet the requirement of the statute as to corroboration (Code Crim. Pro. § 399), the district attorney called as a witness for the prosecution an inmate of State's prison who was serving a term of twenty-five years for an attempt to commit murder. This witness testified that one night, the date he could not remember, he was in a certain restaurant, that defendant and Sgroia, a codefendant and one of the witnesses mentioned, both having dirty shoes, came into the restaurant and he heard a conversation. ''I heard somebody say, I don't know who said it, there were several people there, I don't know who say it, I no pay much attention to it, 'he is off; left him in the trolley track, we lose ourselves in the woods and we come back and he is still lying there dead.' I don't know who said it.'' It was shown that the person who was said to be ''off'' was the deceased. In the charge of the trail justice bearing upon the evidence of this corroborating witness, he called the attention of the jurors to the testimony of such witness that he was present in the restaurant and saw defendant and the codefendant, Sgroia, enter the same, sit down, talk together, and some one, he is not certain who, said: ''He is off, we left him on the track.'' The justice then charged the jury in substance that if the jury found that there was a conspiracy to effect the death of the deceased it was immaterial which one of those who came in with dirty boots said those words. Exception having been taken to that part of the charge the justice made clear his intention to confine his remarks to the men who had dirty shoes. This was error. The witness and codefendant were the only persons who entered the restaurant wearing dirty shoes and the language employed by the justice might readily lead the jurors, especially the members of the jury at whose request the testimony of the corroborating witness was read, to imply that in the opinion of the justice either this codefendant or defendant made the statement quoted. The evidence of corroboration of the accomplices was, therefore, too indefinite and unsatisfactory to justify the verdict of the jury and a new trial should be had in which such evidence may be made more clear and definite.

*People* v. *Parretti,* Supreme Court, Westchester County, November 10, 1921, reversed.

(Argued June 12, 1922; decided July 12, 1922.)

APPEAL from a judgment of the Supreme Court, rendered November 10, 1921, at a Trial Term for the county of Westchester, upon a verdict convicting the defendant of the crime of murder in the first degree.

*Robert H. Elder* and *Otho S. Bowling,* for appellant. The testimony of the accomplices, Sgroia and Danielo, was not corroborated, and the court misdirected the jury as to the evidence which might be considered as corroborative. (People v. Taleisnik, 225 N. Y. 489; People v. O'Farrell, 175 N. Y. 323.)

*Frederick E. Weeks, District Attorney,* for respondent. There was sufficient corroboration of the accomplices. (Code Crim. Proc., § 399; People v. Cassidy, 213 N. Y. 391; People v. McKane, 143 N. Y. 455; People v. Mayhew, 150 N. Y. 346; People v. Elliott, 106 N. Y. 292; People v. Everhardt, 104 N. Y. 591.)

HOGAN, J.:

On the evening of March 16, 1917, the body of one Generosi Nazzaro was found on the trolley car track about two hundred feet north of Montague street, in the neighborhood of Nepperhan avenue, city of Yonkers. An autopsy disclosed two several gunshot wounds on the right side of the body, that one bullet had passed through both lungs, the second bullet had passed through the liver, and death resulted from severe hemorrhages.

About thirty-five feet northerly of the point where the body was found, a derby hat, a pool of blood and a Smith and Wesson five-chambered revolver were discovered. The chambers of the revolver contained three empty shells and one loaded shell. Some thirty feet easterly, a second revolver, known as a " police positive," was found. An examination of that revolver disclosed two chambers fully loaded; the remaining chambers contained exploded shells.

The defendant, together with his brother, Antonio Parretti, Frank Fevrola and Alfonso Sgroia, were jointly indicted for the crime of murder in the first degree in that they caused by criminal means the death of Nazzaro. The defendant was separately tried. The claim of the prosecution upon the trial

was that the shooting of Nazzaro and his death following the same as a result thereof was due to a combination or conspiracy between the parties named in the indictment to effect the death of Nazzaro.

As tending to show a conspiracy between the defendants named in the indictment to kill Nazzaro, one of said defendants, Sgroia, was called as a witness by the People. His evidence, briefly summarized, was in effect that the four named defendants, together with the deceased and one Danielo, subsequently called as a witness for the prosecution, were members of a body known as the Navy street gang, and that a short time before the homicide Nazzaro, the deceased, stated to Sgroia that he desired to trim (kill) Fevrola, who lived in Yonkers (also included in the indictment), and asked Sgroia to accompany him to Yonkers. Sgroia imparted the information to Antonio Parretti, who was one of the leaders of the Navy street gang, and Antonio informed him not to worry as he would take care of the matter and on the following day would send for Fevrola and together they would fix everything up. Soon thereafter, at a meeting in New York at which Sgroia, Fevrola, defendant and Antonio were present, Antonio stated that he and Fevrola had arranged to kill Nazzaro the following day; that defendant and Sgroia were to take Nazzaro to Fevrola's house in Yonkers.

Danielo, called as a witness by the People, testified that some days before the homicide Antonio Parretti stated in his presence and the presence of others that he had discovered the man who double crossed the Navy street gang and wanted to kill a good friend of his; the man was Nazzaro; that Antonio said that he had prepared the trick to do the job to him.

As to the commission of the crime, Sgroia testified in substance that he and defendant were at the house of Fevrola in Yonkers the afternoon of the day of the homicide, at which time Fevrola outlined to them the manner in which Nazzaro was

to be killed and which was later carried out in substantially the following manner: In the evening Sgroia, defendant, Fevrola and Nazzaro walked out some distance in the vicinity of the route of the trolley road to a point where no houses were in view. At a given signal Fevrola and defendant, who together were walking ahead of the other two, stopped and Sgroia and Nazzaro then led the way. By that time darkness had set in. A second signal was later given and Sgroia stepped aside and Fevrola fired a shot at Nazzaro, which was immediately followed by a shot by defendant; Sgroia noticing that Nazzaro was struggling to move away, pulled his revolver and shot at him. He then related the manner in which they, defendant, Sgroia and Fevrola returned to New York, and together appeared at a restaurant on West Forty-fifth street, where Antonio then was.

One Danielo testified that on the following day defendant gave him a brief account of the killing of Nazzaro, stating, " We took him over to the farm there and we done the job."

This brief *resume* of the evidence tended to establish a conspiracy on the part of the defendants named in the indictment to effect the death of Nazzaro and a consummation of such conspiracy.

The defendant as witness upon the trial denied that he was a member of the Navy street gang, that he was a party to the conspiracy to kill Nazzaro, had knowledge of the same, or in any manner participated in causing the death of Nazzaro or had theretofore been charged with the commission of crime.

The witnesses Sgroia and Danielo are inmates of State's prison. Sgroia is serving a sentence after a plea of guilty of manslaughter, first degree, under an indictment for the crime of murder, first degree. He had also been tried and convicted of assault in the first degree and testified that he had committed four murders. Danielo is serving a sentence under plea of guilty of assault, second degree; had also been confined under

like plea of manslaughter, and admitted that he had aided in the commission of several murders.

The trial justice held as matter of law that Sgroia and Danielo were accomplices, and read to the jury as a part of his charge the provision of the Penal Law defining a "principal" and section 399 of the Code of Criminal Procedure, which provides: "A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime."

For the purpose of meeting that requirement of law, the district attorney was presumably compelled to call as a witness for the prosecution one Chiafalo, an inmate of the State's prison who is serving a term of twenty-five years, having been convicted upon a trial of an attempt to murder, and had also served previous terms of imprisonment for minor offenses.

The trial justice held that Sgroia and Danielo were accomplices and submitted to the jury the credibility of the testimony given by Chiafalo and whether or not his evidence was sufficient to satisfy them that the same tended to connect defendant with commission of the crime for which he stood indicted.

The importance of the testimony of this witness necessitates a somewhat extended review of the same, especially in view of the fact that the fundamental question involved in this case is dependent thereon. In a review of such evidence we apply the law laid down by us as to the function of this court in homicide cases where a verdict of murder in the first degree has been rendered by a jury, as definitely pointed out by the present chief judge of this court, then Judge Hiscock, in the opinion written by him in the case of People v. Becker (210 N. Y. 274, 288, 289), which may profitably be quoted here: " The law does cast upon us in such a case as this the burden and responsibility of deciding before permitting execution whether a verdict is supported by the weight of evidence. That, of course,

does not mean that we are to take the place of the jury in passing upon those ordinary questions of the reliability of witnesses and of the credibility of testimony which constantly arise in trials or that we are to overturn the verdict simply because as an original proposition we might have reached a different result. It does mean, however, that we must say if that question should be reached whether, taking into account the undisputed and clear infirmities of the People's witnesses and case, we believe that there is still left such a preponderating weight and balance of apparently worthy testimony as justified the jury in finding that the affirmation of the defendant's guilt was so unclouded by the shadow of any reasonable doubt that the State would be justified in taking his life. * * * The fact that the statute imposes upon us the absolute duty of deciding whether a verdict in a murder case is against the weight of evidence would seem to make it equally plain that the law contemplates the possibility that a jury may be swayed or led into giving an unjust and unwarranted verdict, and requires us to correct the error when it does occur."

The jury having accredited the evidence of the witness Chiafalo, we are required to scrutinize such evidence and determine whether the same " was so unclouded by the shadow of any reasonable doubt that the State would be justified in taking defendant's life."

Chiafalo testified to an acquaintance with the persons named in the indictment and with the deceased Nazzaro, who was also known as " Joe Chuck." He testified that one night, the date he could not remember, he was in a restaurant located across the street from Booth's Theatre on West Forty-fifth street, New York, and remembered that Sgroia and defendant came into the restaurant, and then followed: " Q. Did you notice anything about their clothing? A. Yes, sir, dirty shoes. Q. What conversation did you hear either Sgroia or defendant or both of them have? A. There were several people there, I remem-

ber them saying everything was all right, somebody says, 'He is off.'" Asked to tell all he heard, he replied: "I heard somebody say, I don't know who said it, there were several people there, I don't know who say it, I no pay much attention to it, 'he is off, left him in the trolley track, we lose ourselves in the woods and we come back again and he is still lying there dead.' I don't know who said it. On that evening, he said: 'You go ahead and go away.' I think Antonio said it. I don't know to whom he said it. Q. What was said as to who it was that was off? A. Chuck (Nazzaro)." On cross-examination the witness testified he did not remember that Danielo or Fevrola were in the restaurant, but did remember that Sgroia, defendant, Antonio and others were there.

In the charge to the jury the trial justice, speaking of Chiafalo, said: "The gentleman is not an accomplice. He has testified that on the night in question he was present and saw the defendant and the Butcher (Sgroia) come into the place in Forty-fifth street, New York, sit down, talk together, and someone, he is not certain who, said, 'he is off, we left him on the track.' Gentlemen, if you are satisfied that this murder was committed by arrangement, by agreement, that there was a conspiracy to effect the murder of Joe Chuck (Nazzaro), it is immaterial which of those who came in with dirty boots said those words. Does that testimony given by Charley Young (Chiafalo) tend to corroborate? Is it truthful? Does it convince you beyond a reasonable doubt that the defendant was implicated in the commission of the murder? Does it tend to corroborate? That is a very important question in this case and that you must conscientiously consider and decide."

Counsel for defendant noted an exception to that part of the charge in which reference was made to Young's (Chiafalo's) testimony, "and to that part of your Honor's charge in which you said that if there was a conspiracy, it is immaterial which one of these that came into that restaurant after the homicide

at night said, what was there said about somebody's being off and being left on the tracks."

"The Court: I want no misunderstanding about that. If I said that, I referred to those men who came in there with dirty boots, that is all."

The exception was extended to the modification. At the request of counsel for defendant the trial justice charged the jury, "That in deciding whether the evidence of Young (Chiafalo) is corroborative or not within the meaning of the law, the jury must consider and test Young's evidence by itself unaided by and without any reference to the testimony of either Sgroia or Danielo or the testimony of both of them taken together." The justice declined to charge "that the evidence of the witness Young must show something said or done by this defendant himself and not by another before it can be taken as corroborative within the meaning of the law," to which refusal exception was noted.

The evidence of the witness Chiafalo is vague. The record does not disclose the dimensions of the restaurant, whether large or small, wherein he heard the conversation related by him, the proximity of the other people present therein to the witness, Sgroia or defendant. Whether or not the conversations testified to by Chiafalo were had in his immediate presence or participated in by the group of "several people" does not clearly appear. When inquired of as to conversation between Sgroia and defendant, the witness replied, "There were several people there, I remember them saying everything was all right. I heard somebody say, I don't know who said it, there were several people there, I don't know who say it, I no pay much attention to it. He, Chuck (Nazzaro), is off, left him in the trolley track, we lose ourselves in the woods and we come back and he is still lying there dead. I don't know who said it." When the witness used the words "them saying" in response to the question as to a conversation he heard between Sgroia

and defendant, did he by the use of the word "them" refer to Sgroia and defendant, or, having preceded such words with "there were several people there," by the use of "them" did he refer to one or more of the several people or to "somebody" whom he could not say, especially when taken in connection with his further answer, "I heard somebody say, I don't know who say it, I no pay much attention to it," etc.? The witness did not state that the remarks made were addressed to him or directly testify that Sgroia or defendant made the remarks. Neither was his evidence clarified on redirect examination. How then can it be said that the alleged remarks were made by Sgroia or defendant? We are not to conjecture that possibly Sgroia and defendant were reporting to Antonio, as the witness did not testify that Antonio was present when the conversation was had although at some time but under what circumstances does not appear, Antonio said to someone, "You go ahead and go away." Therefore, there is an absence of evidence as to the time Antonio entered the restaurant, and whether or not Sgroia and defendant were in conversation with him or to whom he addressed the remark attributed to him.

The trial of the defendant was conducted with commendable fairness by the presiding justice, the district attorney and counsel for defendant. In the charge of the justice to the jury bearing upon the evidence of Chiafalo, hereinbefore quoted, and to which exception was duly taken by counsel for defendant, is embodied an expression apparently in conflict with the views we entertain pertaining to the weight of evidence of Chiafalo. Calling attention of the jurors to the testimony of Chiafalo that he was present in the restaurant and saw defendant and Sgroia enter the same, sit down, talk together, and someone, he is not certain who, said, "He is off, we left him on the track," the justice charged the jury in substance that if the jury found that there was a conspiracy to effect the death of Nazzaro it is immaterial which one of those who came in with dirty boots said those words. Exception having been taken to that part of

the charge, the justice made clear his intention to confine his remarks to the men who came in there with dirty shoes.

Sgroia and defendant were the only persons who entered the restaurant wearing dirty shoes. Giving to the testimony of Chiafalo a liberal interpretation, unmistakably the persons referred to by the justice when he charged the jury, "It is immaterial which of those who came in with dirty shoes said those words, 'he is off, we left him on the track,'" were Sgroia and defendant. While we do not attribute to the trial justice an intention to in effect charge the jury that Sgroia or defendant actually uttered the words, nevertheless the language employed might readily lead jurors, especially those members of the jury at whose request the testimony of Chiafalo was afterwards read, to imply that in the opinion of the justice either Sgroia or defendant made the statement quoted.

If such implication was deducible from the charge, can it be said with any reasonable degree of certainty that the jurors may not have attributed to Sgroia or defendant the various conversations overheard by Chiafalo as related by him, the author of which he was absolutely unable to identify from amongst the several people in the restaurant at that time?

The defendant, who has never before been charged with a violation of the criminal law, has been sentenced to a forfeiture of his life after conviction upon the testimony of undesirable men. Concluding as we do that the evidence of corroboration of the accomplices was too indefinite and unsatisfactory to justify the verdict of the jury, and that the ends of justice will be promoted by ordering a new trial whereon the evidence may be made more clear and definite, the judgment of conviction should be reversed and a new trial ordered.

HISCOCK, Ch. J., McLAUGHLIN, and ANDREWS, JJ., concur; CARDOZO, J., concurs in result; POUND and CRANE, JJ., dissent.

Judgment of conviction reversed, etc.