THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CLIFFORD FROST, Defendant.

County Court, Schenectady County, April 21, 1953.

*Mathias P. Poersch* for defendant.
*Emmet J. Lynch, District Attorney*, for plaintiff.

LIDDLE, J.  The defendant, Clifford Frost, was indicted by a Grand Jury of the County of Schenectady, on November 19, 1951, charged with the crime of violating section 1620-a of the Penal Law.

This indictment was duly ordered transferred from the Supreme Court to the Schenectady County Court for trial.

Subsequent thereto counsel for defendant upon notice to the District Attorney, made application to this court for an inspection of the minutes of the Grand Jury.  The court reserved decision on the motion and after an examination of the minutes of the Grand Jury, granted counsel for defendant the right to inspect and examine the minutes upon which said indictment was returned.

The indictment charges the defendant with the crime of perjury, first degree, in that before said Grand Jury on the 4th day of October, 1951, while the defendant was under oath, he knowingly and willfully and intentionally and feloniously falsely testified before the Grand Jury that he never made a bet on the result of the winner of the baseball team winning the 1950 World Series with one Thomas B. Hayner, a known and convicted gambler and that he did not receive payment as a result of winning such bet.

This indictment follows as a result of the Grand Jury upon their investigation of vice, gambling and other alleged illegal and unlawful practices involving law enforcement in the city and county of Schenectady.

The defendant, Clifford Frost, was a member of the Schenectady police force since 1940, and for some time previous to the date of the indictment, was assigned by his superior officer in charge of that department, among others, to what is commonly called the vice squad.  From an examination of the Grand Jury minutes it appears that he earnestly and faithfully performed his duties so assigned to him with others on the squad and among those duties checked repeatedly the place of business of the witness Hayner.

The sole prosecuting witness for the People, Hayner, testified that he had been a gambler and that at least two of his employees had been arrested and convicted, who were at various times managers of Hayner's place of business, namely, Hayner's confectionery, tobacco, cigarettes and magazines store at 1104 Albany Street in the city of Schenectady.

On one of these visitations by officer Frost and another officer of the vice squad, to Hayner's place of business, Hayner testified that a conversation was engaged in between him, Hayner, and

officer Frost, regarding which team would win the 1950 World Series. From the testimony concisely analyzed, a bantering conversation, so to speak, was continued between the two, Hayner testifying that he would bet $25 or $50 on the winner, with Frost. When interrogated as to a payment of this alleged bet, this question was asked and the following answer given: Question. " Did you pay him off? " Answer. " You said it. However, that stuff is minor." Following, and I quote Hayner: " I *might have* made $25.00 bet that way." (Italics added.) Then further, when asked: " Was anyone present? " Answer. " Mullen was present when the bet was made with Frost." Continuing the interrogation by the assistant district attorney, Hayner testified first that Mullen was present and then testified " Mullen could have been there ". At the close of Hayner's testimony before the Grand Jury, Hayner testified that if he went out and made a social bet, he wouldn't consider himself as a professional gambler. He testified " I don't have to depend on gambling for a livelihood. I never did." And then this significant and last question followed: " *Did any* policeman *ever bet with you?* " Answer. " *No.*" (Italics added.)

The defendant, Clifford Frost, testified after signing a waiver of immunity, that during the World Series of 1950, he and officer Mullen were checking at Hayner's soda fountain and newsroom. That there was extreme interest in who was to win the World Series. That he and Hayner did engage in a conversation and the following conversation took place, as testified to by the defendant Frost, and the court quotes: " Two teams, and Hayner says, ' I like such and such a Team! ' I said I didn't. He said, ' how much would you bet on that? ' Or something. I don't know. I don't recall how it was. I do recall I bet a half a hundred or something like that. He laughed and he says, ' Okey.' He went on. That was all there was to it." Then the following question by the assistant district attorney: " Did Hayner ever pay or offer to pay you the bet? " Answer by Frost: " Never. As far as that happening that afternoon, it was strictly a joke."

Thereafter during the investigation, John Mullen, a member of the vice squad and a witness before the Grand Jury, after signing a waiver of immunity, testified that he was with Frost at all times and that at no time did he see or hear a bet made and at no time did he see Hayner pay Frost money on the alleged bet. Without quoting further from the minutes of the Grand Jury, this appears to be the essential testimony on which this Grand Jury indicted the defendant.

Counsel for the defendant orally argued before the court and submitted a memorandum with eagerness and force, that this testimony and the testimony as set forth before the Grand Jury were insufficient as a matter of law, to return an indictment charging the defendant with the crime of perjury in the first degree. That if a bet was made in violation of article 88 of the Penal Law, Hayner was an accomplice, and that there was no corroborating or supporting testimony of the People's sole witness, Hayner, or any documentary corroborating evidence and further that if a bet was made it was a casual bet which is not a violation of law.

The District Attorney, with equal zeal, argued at length that the evidence was sufficient to at least submit the question of the guilt or innocence of the defendant Frost, to a jury.

An indictment must be based upon evidence which in the judgment of the Grand Jury, " would, if unexplained or uncontradicted, warrant a conviction by the trial jury." (Code Crim. Pro., § 258.) And further, section 256 of the Code of Criminal Procedure requires and demands that " The grand jury can receive none but legal evidence."

The testimony of the sole prosecuting witness Hayner, is pregnant with contradictions and at this time in the proceedings upon this indictment, must be carefully scrutinized. As Chief Justice LEHMAN, in *People* v. *Nitzberg* (289 N. Y. 523, 526) held: " ' It is manifest therefore, that if the only testimony before the grand jury is the testimony of accomplices, it cannot be said to be sufficient, if unexplained or uncontradicted, to warrant a conviction by the trial jury ' and when it appears that an indictment is founded upon evidence which as a matter of law is insufficient to warrant a conviction, the courts have power to set it aside. (*People* v. *Sweeney,* 213 N. Y. 37–42.) " And continuing, the court held that " ' This power is based upon the inherent right and duty of the courts to protect a citizen in his constitutional prerogatives and to prevent oppression and persecution. It is a power which the Legislature can neither curtail nor abolish, and, to the extent that legislative enactments are designed to effect either of these ends, they are unconstitutional.' (*People* v. *Glen,* 173 N. Y. 395, 400.) "

The law is well settled that there can be no conviction for the crime of perjury where the only evidence of the false swearing is that of the accusing witness, or if he had not testified, would thereby have admitted his own guilt. (*People* v. *Henry,* 196 App. Div. 177; *People* v. *Sturgis,* 110 App. Div. 1.)

And in *People* v. *Doody* (72 App. Div. 372) quoted in *People* v. *Henry* (*supra*), the court said, " ' Where oral evidence is relied upon to convict a person of perjury, it is necessary to produce at least two witnesses, or one witness, supported by corroborating and independent circumstances.' "

It is to be noted in the testimony before the Grand Jury that no written evidence such as vouchers, slips or otherwise was offered or received to establish the alleged bet and there is no evidence that any was delivered. (*People* v. *Stedeker,* 175 N. Y. 57, 62.)

Further considering this important motion to the People of the State of New York and this defendant, an essential element of the crime of perjury is intent and there must be some evidence before the Grand Jury to establish that element and without such element the defendant upon the testimony offered and received, could not be convicted. Accordingly this essential element of the crime of perjury is that testimony alleged to be false, must be willfully given, that is to say, it must be intentionally and deliberately given, falsely and not through inadvertence, error or mistake.

In carefully analyzing the testimony of the sole complaining witness, Hayner, and the testimony of defendant, Frost, there appears to be as a matter of law, no willful or intentional or deliberate motive to falsely testify before the Grand Jury in question.

It is further to be noted that assuming a bet was made between the two, it was a casual bet as distinguished from a gambling bet as defined by article 88 of the Penal Law and is not a crime. (*Watts* v. *Malatesta,* 262 N. Y. 80, 82.)

Accordingly, this court is impelled to conclude that the indictment charging this defendant, Frost, with the crime of perjury, in the first degree, is founded on illegal and insufficient evidence and if he were on trial before this court and a jury at this time, this court would be required to discharge and acquit this defendant, Clifford Frost.

The indictment is dismissed, the defendant is discharged and his bail exonerated.