Benjamin Gassman, J.
The indictment charges the defendant with two counts of perjury in the first degree. The first count charges the defendant with falsely swearing to a material matter before the State Athletic Commission that he did not hear a conversation between one Anthony Salerno and one William P. Rosensohn concerning a loan to be made by Salerno to Rosensohn in the sum of $10,000, in connection with the promotion of the first Patterson-Johansson world championship fight held on June 26, 1959. The second count of the indictment charged the defendant with falsely swearing before the Grand Jury that one Charles Black did not have a one-third interest in a corporation known as All Star Sports, Inc., which presumably was interested in the promotion of that fight.
At the trial, the People produced William P. Rosensohn, who testified that he received such a loan of $10,000 from Salerno in the defendant’s office and in the presence of the defendant, and who also testified to conversation in which the defendant allegedly participated, in the course of which the defendant, who, *580 Rosensohn testified, was Salerno’s attorney, agreed that Black was to be a one-third stockholder in the said All Star Sports, Inc.
In an attempt to furnish corroboration of Rosensohn’s testimony, the People produced a tape recording of a conversation allegedly held in the Manhattan Hotel between the defendant and Rosensohn, in which, it was claimed, the defendant admitted knowledge of both the loan and Black’s one-third interest in the said corporation. Rosensohn testified that prior to the time such recording was made, he approached the District Attorney’s office in New York County and advised one of the Assistant District Attorneys that a stockholders’ meeting would be held at the Manhattan Hotel at which he and the defendant would be present, and that he arranged to have the District Attorney’s office install a transmitter in that room, for the purpose of recording conversations between him and the defendant. He testified that he consented to the interception of such conversations and that a representative of the District Attorney’s office arranged to have a tape recording machine installed in a room on the floor above that in which such meeting was held, and that such conversations between Rosensohn and the defendant were thus recorded on the tape.
After adducing testimony by witnesses who installed such equipment and who made the tape recordings, which they identified, the People offered one of the reels of tape in evidence. The defendant objected to the reception of that tape. The tape was offered as corroboration of the testimony given by Rosensohn. Without the tape, Rosensohn’s testimony would be uncorroborated.
“ The law is clear that conviction for perjury cannot be sustained when the sole evidence is the oath of a prosecuting witness against the oath of the defendant. In perjury there must be two witnesses or one witness supported by strong corroborative evidence which clearly establishes the falsity of the defendant’s testimony ” (People v. Rosenburg, 203 Misc. 22, 23). The question before this court was whether that reel of tape satisfied the statutory requirement of corroborative evidence sufficiently to render that reel of tape admissible in evidence.
There has never been defined—and rightfully so — any rigid rule prescribing the nature of corroboration required by law. However, there are eases which describe the type of corroborative evidence which the court is justified in accepting.
As far back as 1865, the English courts in Reg. v. Shaw (10 Cox C. C. 66, 72) said: “ What degree of corroborative evidence is requisite must be a matter for the opinion of the tribunal that tries the case, which must see that it deserves the title of *581 corroborative evidence. Any attempt to define the degree of corroboration necessary would be illusory
In New York State, while the corroborative evidence need not be ‘1 tantamount to another witness ’ ’, yet it must be ‘1 strongly corroborative ” of the single witness (Woodbeck v. Keller, 6 Cow. 118, 120). This is particularly true where the principal witness is an “ interested ” or “biased” witness (People v. Henry, 196 App. Div. 177). Corroborative evidence must clearly connect the defendant with the commission of the crime (People v. Parretti, 234 N. Y. 98, 108). “So long as the burden is upon the People of not only removing the presumption of innocence, but of establishing the guilt of the accused beyond a reasonable doubt, a mere scintilla or even some proof is not sufficient to warrant the submission of the case to the jury” (People v. Ledwon, 153 N. Y. 10, 18).
The question the court is caEed upon to determine is whether that offered tape recording measures up to the judicial standards to which reference has been made, sufficiently to render it admissible in evidence.
Whether it is “ strongly corroborative ” must, in some measure, depend on the reliabEity of the prime witness Rosensohn. Conceivably, the corroborative evidence need not be as strong-in the case of a completely disinterested, unbiased and motiveless prime witness as in the case of a witness who reveals bias against the defendant and a motive for testifying against him. The testimony of Rosensohn reveals that he was biased and that he had a motive for testifying as he did, and it cannot be overlooked that before Rosensohn testified before the Grand Jury which indicted the defendant, he asked for and was granted immunity. With these facts in the background, it becomes extremely important to evaluate the strength of the offered corroborative testimony on this critical part of the case. The tape recording in question was made by prearrangement with Rosensohn, who engineered the creation of that recording, which is now offered in evidence in an attempt to corroborate his own testimony.
When that tape was offered in evidence, as part of the voir dire, the court directed that the tape be played back in the courtroom in the absence of the jury, so that the court could determine its admissibility. The court took the precaution of having not one, but two official court reporters take down stenographioally what each of them independently heard emanating from the tape. The court listened to that playback, which took over an hour. The court’s recollection of the playback as well as the individual transcription made by the two official *582 court reporters indicated that only about five minutes of the hour involved any matter relating to or connected with the issues in this case. There are several hundreds of instances where the tape is completely inaudible or unintelligible, and at times, during shorter and longer intervals, there were pauses during which no sound, save perhaps static, was heard. No explanation was made whether such silent intervals were due to the fact that no one spoke or whether they were due to mechanical or other causes.
Eliminating, for the moment, the questions raised by the defendant as to the competency of the police technician who installed the transmitter in the room where the conversations took place as well as the recording equipment in the room on the floor above and who supervised the tape recording, or that there was no proof that no changes, additions or deletions were made on that tape, the character and the strength of such offered corroborative testimony, as represented by that tape, falls far short of the judicial standards set, particularly in the light of the testimonial weakness of the People’s prime witness, Rosensohn. Giving the People the best of it, the tape reveals one isolated statement as to Charles Black’s alleged interest in All Star Sports, Inc., and a reference to a $10,000 loan claimed to have been made to Rosensohn, but by whom, the tape does not reveal. These are claimed by the People as corroborative of Rosensohn’s testimony. However, even those statements are buried in a recording which has no continuity and which, on a great many occasions, is completely unintelligible. The tape recording thus fails to measure up to the test of being ‘ ‘ strongly corroborative ” of the prime witness Rosensohn’s testimony.
Under the circumstances, I do not believe that I have the right, to speculate as to the interpretation of the unintelligible portions of the tape or as to the causes for the many silent periods therein, and I therefore feel that I have no right to let the jury engage in such speculations.
Accordingly the defendant’s objection is sustained and the offered tape is excluded.
Following the above ruling, both sides rested and the defendant moved for the direction of a verdict of acquittal under section 410 of the Code of Criminal Procedure.
The rule requiring corroboration of the testimony of one witness in perjury cases, to which reference was made in the beginning of this opinion, was evolved for the protection of ah accused and to guard against the conviction of persons innocent of such charges. (People v. Phillips, 14 Misc 2d 565 ; People v. Gleason, 285 App. Div. 278 ; People v. Frost, 204 Misc. 44.) *583 With the exclusion of the tape recording, there is a total absence of corroboration of Bosensohn’s testimony, and the motion of the defendant is granted. A verdict of acquittal is directed and the defendant is discharged.