THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* FRANCIS POTWORA, Respondent.

Fourth Department, April 11, 1974.

*Edward C. Cosgrove* (*Richard J. Steiner* of counsel), for appellant.

*Lipsitz, Green, Fahringer, Roll, Schuller & James* (*Herald Price Fahringer,* |*Michael J .Brown* and *Lawrence A. Schulz* of counsel), for respondent.

CARDAMONE, J. We are called upon first to decide whether the evidence before the Grand Jury was sufficient to sustain the indictment on the obscenity counts and, second, whether it was sufficient to sustain the conspiracy count.

The defendant, Francis Potwora, the manager of the Imperial News Company, a wholesale book distributor in Buffalo, New York, was indicted by the Erie County Grand Jury on August 6, 1971 charged with obscenity in the first degree, obscenity in the second degree and conspiracy in the third degree. These indictments arose from the sale and distribution of 15 allegedly pornographic publications consisting of 14 books and one magazine. Upon the presentment, the District Attorney called four witnesses. Three of them testified with respect to the conspiracy to promote the wholesale promotion of the publications—two were Buffalo retail book dealers who received these publications

from the defendant for resale to the public and a third witness was a Buffalo police detective who purchased the 15 publications from the two retail dealers. The fourth witness was a prominent local psychiatrist who described the materials and gave expert testimony as to the obscenity of the publications. Finally, the materials themselves were marked and received as evidence with respect to the crimes sought to be charged against the defendant.

Subsequently, defendant moved to dismiss the indictment on the ground that it violated his constitutional rights because, as he contends, each individual grand juror failed to read the publications and instead relied solely upon the expert's testimony that the publications were obscene. He also moved to dismiss the conspiracy count, claiming that where a crime is alleged to have been committed by two persons, each individual may not be convicted of the conspiracy and the substantive crime. The trial court stated that the evidence was not legally sufficient to establish the offense charged, but without otherwise specifying, granted the defendant's motion to dismiss the indictment. We cannot agree.

If defendant's contention that the Grand Jury relied solely upon an expert's opinion as to the obscenity of these publications were factually correct, we would affirm. Reliance upon such testimony in obscenity cases is of doubtful validity because " this is not a subject that lends itself to the traditional use of expert testimony " (*Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49, 56, n. 6). Where, as here, the materials themselves are actually received in evidence and are before the Grand Jury for it to consider, then they are the best evidence of what they represent (*Paris Adult Theatre I* v. *Slaton*). " Simply stated, hard core pornography * * * can and does speak for itself " (*United States* v. *Wild,* 422 F. 2d 34, 36, cert. den. 402 U. S. 986). Generally speaking, the 14 books and magazine portray photographically and textually all sorts of sexual acts in explicit detail. A cursory examination of the material reveals that every page, every photograph and almost every paragraph portray explicit sexual conduct of the grossest sort.

While concededly the Grand Jury did have before it the expert testimony of a qualified psychiatrist who had read all of these publications and who described these materials and gave his opinion as to their obscenity, it also had before it all 15 publications which were marked, numbered, identified and received. These publications were sufficient in themselves for the Grand Jury to determine the question of obscenity (*Ginzburg* v. *United*

*States,* 383 U. S. 463). We may not conclude, therefore, that the grand jurors relied exclusively upon the expert testimony.

Whether there was legally sufficient evidence before the Grand Jury to sustain the indictment remains to be answered. In considering the question of what constitutes sufficient evidence to sustain an indictment it is helpful to examine the statute which provides that " a grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense " (CPL 190.65, subd. 1). The test for that degree of proof sufficient to sustain an indictment is whether the evidence presented taken together is the equivalent of prima facie proof that the crime charged has been committed by the defendant (*People* v. *Peetz,* 7 N Y 2d 147, 149). In order to return an indictment the Grand Jury must have before it sufficient evidence to warrant a conviction, if unexplained or uncontradicted (*People* v. *Howell,* 3 A D 2d 153, 161, affd. 3 N Y 2d 672). In view of the presumption of regularity that a Grand Jury indictment is based on legal and sufficient evidence (*People* v. *Howell,* 3 N Y 2d 672, 675), a motion to dismiss may be granted only upon a " clear showing " to that effect. In that connection, the defendant has urged that because the grand jurors did not read each publication in its entirety, due to time limitation, that the presumption of regularity has been overcome, citing *People* v. *Bantam Books* (9 Misc 2d 1064). In that case, the trial court correctly concluded that the reading to the Grand Jury of only selected passages of allegedly obscene material from the novel " Ten North Frederick " by John O'Hara was incorrect as a matter of law. Of course any publication alleged to be obscene cannot be judged on selected portions taken out of context but must be considered " by viewing it ' broadly as a whole ' " (*Brown* v. *Kingsley Books,* 1 N Y 2d 177, 188–189; *Halsey* v. *New York Soc. for Suppression of Vice,* 234 N. Y. 1, 4–5). The Supreme Court has similarly held as a consistent criteria in obscenity cases that " the dominant theme of the material taken as a whole must appeal to a prurient interest in sex " (*Miller* v. *California,* 413 U. S. 15; *Kois* v. *Wisconsin,* 408 U. S. 229, 230; *Memoirs* v. *Massachusetts,* 383 U. S. 413, 418; *Roth* v. *United States,* 354 U. S. 476, 489). We agree that if the sole evidence presented consisted only of preselected passages, this would be insufficient under the above authorities to sustain this obscenity indictment. We cannot read into such a rule, however, a requirement

that each grand juror read every publication from cover to cover. Such would serve no useful purpose in the context of the "hard-core" pornography (*Miller* v. *California, supra*; *People* v. *Heller*, 29 N Y 2d 319, remanded 413 U. S. 483) evident in this case. It would exalt form over substance because "whether one samples every 5th, 10th, or 20th page, beginning at any point or page at random, the content is unvarying" (*Kaplan* v. *California*, 413 U. S. 115, 117). Rather, as stated, we are satisfied that the Grand Jury could reasonably conclude that considered as a whole the material appeals solely to a prurient interest in sex, is without redeeming social value and exceeds the level of candor tolerated by the community in the representation of sex. We conclude, therefore, that the evidence before the Grand Jury was legally sufficient to sustain the two counts of the obscenity indictment against this defendant.

The defendant's final contention that the conspiracy count must fail for insufficient evidence is without merit. Defendant correctly contends that "if a crime necessarily involves the mutual cooperation of two persons, and if they have committed the crime, they may not be convicted of a conspiracy to commit it" (*United States* v. *Zeuli*, 137 F. 2d 845, 846). This does not mean that whenever conspirators have consummated the planned crime that they may not be convicted of conspiracy. It does mean, however, that when the planned crime requires some reciprocal action of the conspirators they may not be indicted for conspiracy if in fact they have committed it (*United States* v. *Center Veal & Beef Co.*, 162 F. 2d 766, 770 [LEARNED HAND, J.]). Stated in other words "where concert is necessary to an offense, conspiracy does not lie" (*United States* v. *Sager*, 49 F. 2d 725, 727).[1]

In this case concert between two persons is not an essential element of either of the substantive crimes charged (obscenity in the first degree — Penal Law, § 235.06; and obscenity in the second degree — Penal Law, § 235.05). Under either of these crimes charged the defendant may be found guilty for his individual conduct in knowingly possessing obscene materials totally separate from concert with any coconspirators. Further, the rule followed in New York is clear that conspiracy

---

1. Bribery and the unlawful sale of liquor are examples of situations where conspiracy may not ordinarily be charged in addition to the substantive offense since the concert between the giver and receiver or the buyer and seller is an essential element of the substantive crime charged (*United States* v. *Sager* [bribery]; *United States* v. *Katz*, 271 U. S. 354 [unlawful sale of whiskey]). This principle found application in older cases in such factual settings as bigamy, dueling and rioting (*Vannata* v. *United States*, 289 F. 424, 427).

to commit a crime constitutes a distinct offense separable from the consummated crime and is not merged in it. The gravamen of the crime of conspiracy is the agreement or plan among two or more to commit some crime in the future (*People* v. *Epton,* 19 N Y 2d 496, 507–508; *People* v. *Tavormina,* 257 N. Y. 84, 93). We conclude, therefore, that there was sufficient evidence before the Grand Jury to sustain the conspiracy count in the indictment against this defendant.

The order appealed from should be reversed and the indictment reinstated.

MARSH, P. J., MOULE, SIMONS and MAHONEY, JJ., concur.

Order unanimously reversed and indictment reinstated.