633 F.2d 626
 80-2 USTC P 9724
 Pasquale LAINO and Minerva Laino, Plaintiffs-Appellants,
v.
UNITED STATES of America, Jerome Kurtz, as he is the
Commissioner of the Internal Revenue Service, and George S.
Alberts, as he is the District Director of Internal Revenue,
Brooklyn District, Defendants-Appellees.
 No. 85, Docket 80-6039.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 17, 1980.
Decided Oct. 6, 1980.
 
 John A. Dudeck, Jr., Tax Div., Dept. of Justice, Washington, D.C. (Edward R. Korman, U.S. Atty., E. D. N. Y., New York City, M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Richard W. Perkins, Tax Div., Dept. of Justice, Washington, D.C., of counsel), for defendants-appellees.
 Elliott H. Pollack, New York City (Law Offices of Michael B. Pollack, New York City), for plaintiffs-appellants.
 Before FRIENDLY and MESKILL, Circuit Judges, and BONSAL, District Judge.*
 FRIENDLY, Circuit Judge:
 
 
 1
 Pasquale and Minerva Laino, husband and wife, brought suit in the District Court for the Eastern District of New York, seeking to declare null and void an income tax assessment based on unreported income from gambling activities asserted against them by the Commissioner of Internal Revenue, and to enjoin the Commissioner from enforcing a lien to collect the tax.[1] The district court dismissed the complaint for lack of subject matter jurisdiction and this appeal followed. We affirm.
 
 
 2
 Appellants' tax problems date back to 1973, when the New York City Police Department placed Pasquale Laino under surveillance on suspicion of bookmaking activities. According to the sworn affidavit of Patrolman Robert Patterson, on five days in April beginning on April 2, 1973, Laino was observed receiving slips of paper and money in bill form from a variety of persons at a social club in Brooklyn. In a typical transaction, a "runner" would enter the premises, hand an envelope or brown paper bag containing the policy slips and cash to Laino, who would then count the money, place the slips behind a counter and stash the bills in his pocket. Late in the afternoon Laino would put all the slips and bills in a large brown paper bag and give the bag to someone else, who would then leave the club and drive off. The affidavit also alleged that on one occasion the large brown paper bag containing the day's receipts was placed in the trunk of a Cadillac regularly used by Laino, and that on one afternoon late in April, the bag was taken directly to Laino's residence in Queens. Based on this affidavit, a search warrant issued and a raid of the Laino home took place on May 3, 1973. In the course of their search, the police seized 8 banker statements, 142 controller statements, 9 pay and collect slips, 4 controller ribbons, 181 weekly collectors' records, one adding machine, and $1,713 in currency.
 
 
 3
 Pasquale Laino was arrested and indicted on one count of promoting gambling in the second degree and one count of possession of gambling records in the second degree. Penal Law, McKinney's Consol. Laws of N.Y.Ann., §§ 225.05, 225.15. On January 7, 1974, Laino withdrew his pleas of not guilty and pled guilty to the second count of possession of gambling records. Upon the recommendation of the district attorney, the court accepted the plea. Prior to sentencing, counsel for Laino made the following statement, which we shall relate because of the importance attached to it by appellants:
 
 
 4
 He has not been previously convicted of any crime. His involvement I can say was a minor one. These were not his personal records. He was an employee of someone making a normal salary for just holding the records. He is not anything big in the hierachy. He is like a middle man. He is gainfully employed.
 
 This colloquy continued as follows:
 
 5
 The Court: How old are your children?
 
 
 6
 The Defendant: The oldest one is eight, six, three and three months.
 
 
 7
 The Court: How old are you, sir?
 
 
 8
 The Defendant: Thirty-three years old.
 
 
 9
 The Court: Well, I don't think any useful purpose would be (served by) putting you on probation. If you have been fooling around with policy or gambling, this is the time to stop.
 
 
 10
 Laino received a fine of $1,000.
 
 
 11
 On July 20, 1977, the Internal Revenue Service (IRS) mailed a notice of deficiency to appellants, notifying them of unpaid taxes for 1973 in the amount of $57,677.87 plus interest and penalties. The amount of unreported taxable income was computed as follows: from 5 days of betting slips totalling $67,115.70 seized in the raid on Laino's house, an average per day of $13,423.14 was obtained. This daily average was multiplied by 29 days, yielding a figure for gross receipts equal to $389,271.06. Profits were estimated at thirty-five percent, resulting in unreported net taxable income of $136,244.87. The tax owing on the Laino's reported and unreported income was then calculated to be $57,677.87.
 
 
 12
 At no time did appellants take advantage of their right to file a petition with the Tax Court seeking redetermination of the deficiency, see 26 U.S.C. § 6213. Subsequently, in December, 1977, the IRS assessed the outstanding taxes, penalty and interest against them, and in March, 1978, filed notice of a tax lien in the office of the Register of Queens County, N.Y., where the Lainos' home is located. Another year passed, and in May, 1979, appellants brought this action in the district court seeking injunctive and declaratory relief. Their principal contention below, and again on appeal, was that Pasquale Laino had no proprietary interest in the bookmaking operation but served merely as a bookkeeper at a salary of $150 per week, and that the Commissioner had not presented any evidence of ownership. According to appellants, the Commissioner's assessment attributing the total profits of the scheme to Laino thus lacked any basis in fact. As noted above, the district court, for reasons which will appear more clearly below, dismissed for lack of subject matter jurisdiction.
 
 
 13
 Section 7421(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 7421(a), commonly known as the Anti-Injunction Act (the Act), provides with certain exceptions that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." The only statutory exception of which appellants might at one time have availed themselves is that set out in section 6213(a), 26 U.S.C. § 6213(a), which prohibits the Commissioner from assessing or collecting a tax prior to the mailing of a notice of deficiency, prior to the expiration of the ninety-day period following such a mailing in which a taxpayer may petition the Tax Court for a redetermination of the deficiency, or prior to the rendering of a final decision of the Tax Court if such a petition has been filed. In these circumstances, if the Commissioner makes an assessment or takes steps to collect a tax, section 6213(a) expressly allows injunctive relief. Appellants, however, have not questioned the validity or the receipt of the notice of deficiency sent to them, nor did they petition the Tax Court during the ninety-day period or at any time thereafter.
 
 
 14
 Recognizing the force of this statutory bar to the maintenance of their suit, appellants seek to bring their cause within the judicially created exception to the Anti-Injunction Act articulated in Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). There the Court announced a two-part test permitting an injunction suit to be maintained "if it is clear that under no circumstances could the Government ultimately prevail," and if equity jurisdiction otherwise exists. Id. at 7, 82 S.Ct. at 1129.
 
 
 15
 (T)he question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit. Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained. Otherwise, the District Court is without jurisdiction, and the complaint must be dismissed.
 
 
 16
 Id. Later decisions reaffirming this two-pronged test have noted the "almost literal effect" which Williams Packing gave to the Act, and characterized it as requiring that the Government's action be "plainly without a legal basis" or have "no chance of success on the merits." Bob Jones University v. Simon, 416 U.S. 725, 737, 745, 94 S.Ct. 2038, 2046, 2050, 40 L.Ed.2d 496 (1974). See also Alexander v. "Americans United" Inc., 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974); Commissioner of Internal Revenue v. Shapiro, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976). Appellants' attempt to invoke Williams Packing must be rejected because they have failed to satisfy either of its prerequisites, namely, a showing of equity jurisdiction or that "under no circumstances could the Government ultimately prevail."[2]
 
 
 17
 Appellants assert that the one legal remedy still open to them a refund suit which would require that they first pay in full the amount assessed against them by the Commissioner, see Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) is inadequate because they are financially unable to "pay first and litigate later." Id. at 168, 80 S.Ct. at 642. Moreover, they assert that if the IRS were to foreclose upon their house, in which they reside with their five minor children, they would suffer irreparable harm. Accepting these contentions as true for the purpose of argument, and acknowledging that no judge could regard with enthusiasm the prospect of the dispossession of a family of seven, we nevertheless must view the adequacy of appellants' legal remedies in the light of all the remedies afforded them by the Internal Revenue Code. From this perspective, it is decisive that appellants failed to exhaust their legal remedies by neglecting to petition the Tax Court for a redetermination of the deficiency. See 26 U.S.C. § 6213. Unlike a refund suit, a petition under section 6213 allows the taxpayer to litigate first and pay, if necessary, later. Appellants here have utterly failed to explain why they chose not to follow this generous avenue of relief. Under these circumstances, appellants cannot be heard to complain they now lack an adequate remedy at law.
 
 
 18
 The case law supports this position. In Commissioner of Internal Revenue v. Shapiro, supra, a jeopardy assessment case in which the taxpayer sought injunctive relief while his petition before the Tax Court was still pending, the Court observed that if "the absence of a remedy at law at this time is due to respondent's failure to pursue that remedy, then equity will not intervene and the complaint should be dismissed. The inadequacy of his legal remedy would then be due to his own choice not to pursue it." 424 U.S. at 634 n. 15, 96 S.Ct. at 1074 n. 15. Likewise, in Alexander v. "Americans United" Inc., supra, it was said: "A taxpayer cannot render an available review procedure an inadequate remedy at law by voluntarily forgoing it." 416 U.S. at 762 n. 13, 94 S.Ct. at 2059 n. 13. See Graham v. Du Pont, 262 U.S. 234, 256, 43 S.Ct. 567, 569, 67 L.Ed. 965 (1923); Black v. United States, 534 F.2d 524, 527 (2 Cir. 1976); County of Los Angeles v. Marshall, 442 F.Supp. 1186, 1189 n. 1 (D.D.C.1977); Smaldone v. Kurtz, 450 F.Supp. 1138, 1140 (D.D.C. 1978). Thus, taxpayers who-like appellants-failed to file a timely petition before the Tax Court for preassessment relief have been held unable to satisfy the prerequisites to equity jurisdiction necessary to overcome the barrier of the Anti-Injunction Act. Bowen v. United States, 331 F.2d 149, 150 (5 Cir. 1964) (per curiam); Walker v. Internal Revenue Service, 333 F.2d 768, 771 (9 Cir. 1964), cert. denied, 380 U.S. 926, 85 S.Ct. 910, 13 L.Ed.2d 811 (1965); Boren v. Riddell, 56-2 U.S.T.C. P 9883 (S.D.Cal.1956), aff'd, 241 F.2d 670 (9 Cir. 1957); Cooper Agency v. McLeod, 247 F.Supp. 57, 61 (E.D.S.C.1965). See 9 Mertens, Law of Federal Income Taxation, § 49.210, at 49-347 (1977). Equity jurisdiction has also been held not to exist when the taxpayer simultaneously petitions the Tax Court for a redetermination of deficiency while seeking an injunction in the district court, Blech v. United States, 595 F.2d 462, 467 (9 Cir. 1979), and to terminate when, after suit is begun in the district court, the Commissioner issues a notice of deficiency allowing the taxpayer to pursue Tax Court review. Johnson v. United States, 374 F.Supp. 1113, 1114 (S.D.Cal.1974).[3]
 
 
 19
 Our conclusion that appellants' failure to petition the Tax Court pursuant to section 6213 is dispositive of this appeal gains reinforcement from an understanding of the legislative history of that provision, first enacted in 1924. The House Report explained:The Committee recommends the establishment of a Board of Tax Appeals (now the Tax Court) to which a taxpayer may appeal prior to the payment of an additional assessment of income, excess-profits, war-profits, or estate taxes. Although a taxpayer may, after payment of his tax, bring suit for the recovery thereof and thus secure a judicial determination on the questions involved, he cannot, in view of section 3224 of the Revised Statutes (the Anti-Injunction Act), which prohibits suits to enjoin the collection of taxes, secure such a determination prior to the payment of the tax. The right of appeal after payment of the tax is an incomplete remedy, and does little to remove the hardship occasioned by an incorrect assessment.
 
 
 20
 H.Rep.No. 179, 68th Cong., 1st Sess. 7 (1924), reprinted in Cum. Bull. 1939-1, Pt. 2, at 246-47. Four years later Congress modified the predecessor of section 6213, by inserting a narrow exception to the Anti-Injunction Act, described above, which countenanced injunctive relief to restrain the Commissioner from assessing or collecting a tax before the mailing of a notice of deficiency, before the expiration of the period for filing a Tax Court petition, or if a petition were filed, before the decision of the Tax Court became final. Revenue Act of 1928, 45 Stat. 791, 852. Thus it appears that the potential difficulty inherent in a refund suit, the very hardship of which appellants complain here, was an evil which Congress sought to overcome not by dissolving the bar of the Anti-Injunction Act altogether, but by providing for pre-payment review of the Commissioner's determination. The exception to the Act which accompanied this legislative solution was a limited one, designed solely to protect the taxpayer's right to seek Tax Court review before paying any assessment. It would be a patent violation of this legislative plan were we to encourage taxpayers to spurn redetermination by the Tax Court and to come instead into equity complaining of the hardship of a refund suit. See Flora v. United States, supra, 362 U.S. at 175, 80 S.Ct. at 645.[4]
 
 
 21
 We hold alternatively that even if equity jurisdiction were established, the complaint would have to be dismissed because appellants have not shown that under no circumstances could the Government prevail on the merits. Appellants insist that Pasquale Laino was but a low-salaried scribe without any proprietary interest in the bookmaking operation. In support of this view, they rely chiefly on the "unchallenged" assertion by Laino's attorney immediately prior to sentencing that Laino was "an employee of someone making a normal salary for just holding the records," and not "anything big in the hierarchy."
 
 
 22
 The prosecutor's silence in the face of these self-serving statements cannot be said to establish their veracity. As noted above, Laino was indicted on two counts and originally pled not guilty to both. As a result of plea bargaining, the prosecutor apparently decided to drop the count of promoting gambling in return for a guilty plea to the second count of possession of gambling records. The gist of the offense charged in the dropped count was knowingly advancing or profiting from illegal gambling activity. When Laino's counsel made the statements in question, implying that Laino had not shared in the gambling profits, the prosecutor had just recommended to the court that the plea be accepted. Under these circumstances it was not to be expected that the prosecutor would accuse Laino of a role in the gambling ring more appropriately described in the count he had agreed to drop. In effect, appellant would have us treat Laino's guilty plea to the second count as establishing his innocence on the first count.
 
 
 23
 Apart from the dialogue at Laino's sentencing, appellants contend that the record is devoid of any evidence of a proprietary interest in the illegal operation on Laino's part. Again we disagree. Under New York's standards, Laino's indictment for knowingly advancing or profiting from unlawful gambling activity could not have issued unless the grand jury considered the evidence sufficient, if unexplained or uncontradicted, to justify a jury verdict of guilty beyond a reasonable doubt, People v. Potwora, 44 A.D.2d 207, 354 N.Y.S.2d 492 (1974); People v. Phillips, 14 Misc.2d 565, 177 N.Y.S.2d 804 (1958); and an indictment is presumed valid until properly impeached. People v. Nitzberg, 289 N.Y. 523, 47 N.E.2d 37 (1943). The affidavit of Patrolman Patterson, the truthfulness of which appellants do not dispute, indicates that Laino was observed on numerous occasions receiving, counting, and safeguarding policy slips and what must have been large amounts of currency, a risk-laden task of central importance, one would think, to the gambling ring's success. In addition, the police surveillance revealed that a car regularly used by Laino was involved in transporting the day's receipts and that on at least one occasion, the large brown paper bag was delivered to his home. At the time of the raid, police discovered in the Laino residence a variety of gambling paraphernalia, as well as $1,713, a large amount of cash for a man allegedly earning $150 a week. While this evidence is not free from ambiguity, it was sufficient to allow the Commissioner to conclude that Laino occupied a role in the bookmaking operation likely to have netted him substantial income. To be sure, the same facts may also be consistent with a picture of Laino as the small fry who got nabbed while the big fish got away, but this does not suffice to meet appellants' burden. We have been instructed to take the view of the facts that is most liberal to the Commissioner, not to the taxpayer seeking injunctive relief. See Enochs v. Williams Packing & Navigation Co., supra, 370 U.S. at 7, 82 S.Ct. at 1129. Under this standard, we cannot say that the Government has "no chance of success on the merits." Bob Jones University v. Simon, supra, 416 U.S. at 745, 94 S.Ct. at 2050.[5]
 
 
 24
 The cases relied on by appellants support only the proposition that when the Commissioner's assessment is lacking in any factual basis whatsoever, the Williams Packing requirement is satisfied. In Pizzarello v. United States, 408 F.2d 579 (2 Cir.), cert. denied, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969), the taxpayer had been indicted for illegally accepting wagers during a two-week period in 1965. The Commissioner, however, without any foundation in fact, assessed the wagering tax for a five-year period dating back to 1960, and we accordingly rejected the assessment as totally excessive because based on entirely inadequate information. 408 F.2d at 584.[6] In Willits v. Richardson, 497 F.2d 240 (5 Cir. 1974), the Commissioner based his assessment on alleged sales of cocaine even though the evidence, "scanty and largely inaccurate ... at best, amounted to nothing more than a vague suspicion" that the taxpayer had acquired certain assets by improper means. Id. at 245. Gerardo v. Commissioner of Internal Revenue, 552 F.2d 549 (3 Cir. 1977), Carson v. United States, 560 F.2d 693 (5 Cir. 1977), and De Cavalcante v. Commissioner of Internal Revenue, 620 F.2d 23 (3 Cir. 1980) refund suits or cases on appeal from the Tax Court and not injunction suits were all actions in which the Commissioner failed to produce any evidence tending to show that the taxpayers engaged in gambling activities during portions of the periods for which taxes were said to be due. See also Rinieri v. Scanlon, 254 F.Supp. 469 (S.D.N.Y.1966). In Weimerskirch v. Commissioner of Internal Revenue, 596 F.2d 358 (9 Cir. 1979), a drug-income case on appeal from the Tax Court, the Commissioner had declined to introduce any evidence at all, choosing to rest instead on the presumption of the correctness of his determination. As we have established that the Commissioner did have a sufficient factual basis for concluding that Laino was a major figure in the gambling scheme, these cases are inapposite. Furthermore, the cases cited are uniformly concerned with the sufficiency of the evidence establishing the taxpayer's connection during a particular time period to the tax-generating, illegal activities. Appellants admit that Laino was involved in the bookmaking operation during the time in question, and in their brief and argument to this court, they have not questioned the Commissioner's determination that twenty-nine days in April and May of 1973 constitute an appropriate interval.[7] They dispute only Laino's status in the criminal hierarchy, an issue on which no case cited to us has reversed the Commissioner's determination.
 
 
 25
 The decision of the Fifth Circuit in Lucia v. United States, supra, likewise does not advance appellants' cause. In that case, although there was ample evidence of the taxpayer's involvement in wagering activities, the court of appeals reversed and remanded to the district court to determine whether the method of computation, which projected one day's receipts over four-and-a-half years, was arbitrary and capricious. Appellants have not drawn the Commissioner's computational method into controversy, and indeed they would have been hard pressed to find fault with the extrapolation of five days' betting slips over twenty-nine days, especially given the regularity of the operation observed by the police. See De Lorenzo v. United States, 555 F.2d 27, 29 (2 Cir. 1977); Hamilton v. United States, 309 F.Supp. 468, 472-74 (S.D.N.Y.1969), aff'd per curiam, 429 F.2d 427 (2 Cir. 1970), cert. denied, 401 U.S. 913, 91 S.Ct. 881, 27 L.Ed.2d 812 (1971).
 
 
 26
 Our decision that appellants have failed to show the impossibility of the Government's succeeding on the merits is fully in accord with the Anti-Injunction Act's purpose of permitting the United States "to assess and collect taxes alleged to be due without judicial intervention." Enochs v. Williams Packing & Navigation Co., supra, 370 U.S. at 7, 82 S.Ct. at 1129. If taxpayers admittedly involved in illegal tax-generating activities could forestall collection by litigating conclusory allegations of their hireling status, the ability of the Government to collect its lawful revenues promptly would be seriously impaired.
 
 
 27
 The decision of the district court dismissing the complaint for lack of subject matter jurisdiction is hereby affirmed.[8]
 
 
 
 *
 United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The assessment against Mrs. Laino was based solely on her having filed a joint return with her husband
 
 
 [2]
 Because we hold that appellants' suit is barred by the Anti-Injunction Act, we need not decide whether it is also precluded by the federal tax exception to the Declaratory Judgment Act, 28 U.S.C. § 2201. See Bob Jones University v. Simon, supra, 416 U.S. at 732 n. 7, 94 S.Ct. at 2044 n. 7
 
 
 [3]
 Our decision in Bauer v. Foley, 404 F.2d 1215 (2 Cir. 1968), on rehearing, 408 F.2d 1331 (2 Cir. 1969), cited by counsel for appellants at oral argument, has no application to the facts of this case. There the plaintiff had not received actual notice of the deficiency until after the ninety-day period for petitioning the Tax Court had expired. Even more significantly, the plaintiff alleged that the joint notice of deficiency sent to her estranged husband was not legally effective with respect to her, the original joint returns either having been forged by the husband or signed under duress and therefore invalid. We remanded to the district court for further findings on the forgery and duress allegations upon the theory that if the facts alleged by the plaintiff were true, her remedy of petitioning the Tax Court for a redetermination of the deficiency had been foreclosed, since she had received neither actual nor legal notice. Here, appellants have not disputed the validity of the notice sent to them, nor their actual receipt of it. Neither has appellant Minerva Laino claimed that she did not voluntarily join in the joint tax return for 1973. Given these critical factual dissimilarities, Bauer cannot be considered as supporting appellants' case
 It is worth noting that although the Bauer court discussed the case in terms of the judicially created exception to the Anti-Injunction Act delineated in Enochs v. Williams Packing & Navigation Co., supra, this was unnecessary; if the joint notice of deficiency was defective, the plaintiff's request for injunctive relief could have been granted pursuant to the exception to the Anti-Injunction Act contained in 26 U.S.C. § 6213(a).
 
 
 [4]
 Our conclusion that appellants inexcusably bypassed an adequate legal remedy makes it unnecessary to determine whether in the circumstances of this case, a refund suit afforded them another adequate remedy at law
 
 
 [5]
 We note in passing that Commissioner of Internal Revenue v. Shapiro, supra, while reaffirming the holding of Williams Packing, intimated that the Commissioner might be obliged to disclose facts amounting to "probable cause" to support his determination, 424 U.S. at 633, 96 S.Ct. at 1073; see Schildcrout v. McKeever, 580 F.2d 994, 997 (9 Cir. 1978), a standard arguably less favorable to the Government than that stated in Williams Packing, see 424 U.S. at 634-35, 96 S.Ct. at 1074 (dissenting opinion of Mr. Justice Blackmun). We have no occasion here to consider whether Shapiro weakened the Williams Packing test since the facts adduced by the Government would pass muster under a probable cause standard as well as under the language of Williams Packing
 
 
 [6]
 The opinion in Pizzarello also took a skeptical view of the Commissioner's method of computation, 408 F.2d at 583-84, and further ruled that evidence obtained from an unlawful search could not be used to support an assessment. Id. at 584-86. Although the precedential force of the Pizzarello court's comments as to computation would seem to be eroded by our subsequent decision in Hamilton v. United States, 429 F.2d 427 (2 Cir. 1969) (per curiam) (affirming 309 F.Supp. 468 (S.D.N.Y.1969)), cert. denied, 401 U.S. 913, 91 S.Ct. 881, 27 L.Ed.2d 812 (1971), despite our disclaimer, id. at 427, this is an issue we need not address, since in the instant case the Commissioner's method of calculation is not disputed, see our discussion of Lucia v. United States, 474 F.2d 565 (5 Cir. 1973) (en banc), infra
 
 
 [7]
 In their complaint, appellants initially attacked as erroneous the Commissioner's determination that Laino was involved in gambling activities for the twenty-nine-day period, but they did not pursue the point. The period between the first police surveillance of Laino's gambling activities on April 2, 1973, and the raid on the Laino house on May 3 encompassed thirty-two days
 
 
 [8]
 Appellants attempt to color their complaint as an action to quiet title under 28 U.S.C. § 2410(a). Because they clearly seek to attack the validity of the underlying assessment, our decision in Falik v. United States, 343 F.2d 38 (2 Cir. 1965), presents an insurmountable barrier to this effort to circumvent the Anti-Injunction Act. See 9 Mertens, supra, at § 54.60