**Arthur T. DAVIDSON, M.D. and Ezeria W. Davidson, Plaintiffs,**

v.

**COMMISSIONER OF INTERNAL REVENUE, George Paterno, Agent of Internal Revenue, and Government of the United States of America, Defendants.**

**No. 81 Civ. 3011–CSH.**

United States District Court, S.D. New York.

May 1, 1984.

---

Arthur T. Davidson, pro se.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendants; William J. Brennan, Asst. U.S. Atty., New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiffs Arthur and Ezeria Davidson bring this action against the United States,

the Commissioner of the Internal Revenue Service, and Revenue Officer George Paterno to restrain the IRS from enforcing a levy on plaintiffs' personal bank account on the ground that the actions of the IRS, through its agent Paterno, were racially motivated. Plaintiffs also seek actual and punitive damages. The case is presently before the Court on defendants' motion to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(1) and (6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. For the reasons stated, defendants' motion is granted.

*Factual Background*

The circumstances giving rise to this suit are as follows. On September 5, 1979, the IRS made an assessment against plaintiffs in the amount of $1,115.43 with respect to their personal income tax liability for the year 1976. (Paterno Aff. ¶ 3 and Ex. A). IRS records indicate that plaintiffs were promptly sent a notice and demand for payment. On July 11, 1980, a follow-up letter was sent to plaintiffs again notifying them of their outstanding obligation and advising them as follows:

"If we do not receive your payment or if you do not contact our office, enforcement action can be taken at any time after 10 days from the date of this letter without any further notice to you. Salary or wages due you may be levied upon, as provided by section 6331 of the Internal Revenue Code, by serving a notice of levy on your employer. Bank accounts, receivables, commissions, or any other kind of income you have are also subject to levy. Any property or rights to property, such as automobiles, may also be seized and sold to satisfy your tax liability." (Paterno Ex. C).

The above letter was returned to the IRS with a handwritten statement scrawled across the face of it stating that plaintiffs were "unable to pay this amount at this time." (*Id.*). The matter was then assigned to Revenue Officer Paterno for collection. On November 7, 1980, Paterno sent plaintiffs a notice of their liabilities for the years 1969, 1972, and 1976 and urged them to send the balances due promptly. (Paterno Ex. E). Plaintiff Arthur Davidson again returned the IRS notice with a typewritten statement to the effect that "this matter is now in the United States District Courts and is scheduled to be heard by the Court of Appeals for the 2nd Circuit." *Id.* Officer Paterno thereafter prepared a notice of federal tax lien with respect to plaintiffs' liabilities for the years 1972 and 1976 which was filed with the County Clerk, Westchester County. (Paterno Ex. A).

An assessment in the amount of $4,515.39 was also made against plaintiffs for the year 1972. Officer Paterno was assigned to this matter as well, and, as described above, included plaintiffs' 1972 tax liabilities in his November 7, 1980 request for payment as well as the notice of federal tax lien filed in the Westchester County Clerk's Office. (Paterno Aff. ¶ 5).

Also pertinent to this litigation, although not directly in issue here, are certain assessments made against plaintiff Arthur Davidson's business corporation in connection with its returns for the second and third quarters of 1979 and the second quarter of 1978. (Paterno Ex. G). The corporation was advised on February 18, 1981, by way of a "Final Notice Before Seizure" letter, that the IRS could seize its property if its outstanding taxes were not paid within ten days. On May 12, 1981, at the direction of his group manager, Officer Paterno served a levy on the checking account maintained by the corporation at Citibank, N.A. (Paterno Aff. ¶ 9).

This levy on plaintiff's corporate account prompted an irate phone call to Paterno from Dr. Davidson, a call plaintiff alleges took place on May 14, 1981 (Am.Comp. ¶ 15), but which Paterno and two other witnesses aver took place on May 13, 1981 (Paterno Aff. ¶ 10). The parties' accounts of the ensuing conversation and its aftermath differ substantially. Plaintiff contends that he asked Paterno why "such a drastic action" had been taken without prior notice in view of plaintiffs' demonstrated readiness to make some arrangements

to resolve the matter. When plaintiff suggested that Paterno's actions were grounded in racial animus, Officer Paterno allegedly replied, "I will show you how prejudiced an Italian can be against a black physician," and slammed down the phone. (Am.Comp. ¶¶ 16–17). Paterno acknowledges that the conversation was heated but vigorously denies making the racial comment attributed to him or any other racial remarks. Two other IRS officers present during the phone call, one of whom is black, support Paterno's version of the conversation. (Anderson Aff. ¶ 3; Merola Aff. ¶ 3).

On May 14, 1981, the day following the phone call, Paterno served a levy on Dr. Davidson's personal account at Citibank, an action plaintiffs attribute to Paterno's "racial prejudice." (Am.Comp. ¶ 19). Paterno disputes this characterization and avers that, up until May 13, 1981, the IRS was completely unaware of a personal account upon which the IRS could levy and apply toward plaintiffs' personal income tax liabilities. On that day, Dr. Davidson himself inadvertently revealed to Paterno's acting group manager, John Manolis, that he maintained an individual account at Citibank in addition to his corporation's account. (Manolis Aff. ¶¶ 3–4). Manolis communicated this information to Paterno, who promptly served a levy on this account in accordance with his collection responsibilities. (Paterno Aff. ¶ 11).

*Defendants' Motion to Dismiss*

Defendants move to dismiss the amended complaint on the ground that the action is barred by section 7421 of the Internal Revenue Code, 26 U.S.C. § 7421, and on the further ground that none of the statutes cited by plaintiffs serve as a jurisdictional predicate for the action. Even assuming jurisdiction were proper, defendants argue that they are entitled to summary judgment.

To the extent that plaintiffs seek to restrain the IRS from levying against their personal Citibank account, the action is clearly barred by § 7421 of the Internal Revenue Code. That section, commonly referred to as the Anti-Injunction Act, provides in pertinent part as follows:

"[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

The principal purpose of the Act, as articulated by the Supreme Court, is to protect the government's "need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference and 'to require that the legal right to the disputed sums be determined in a suit for a refund.'" *Bob Jones University v. Simon*, 416 U.S. 725, 736, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974), quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). In furtherance of these goals, the Act has been interpreted broadly to apply not only to the assessment and collection of taxes but also to "activities which are intended to or may culminate in the assessment or collection of taxes." *United States v. Dema*, 544 F.2d 1373, 1376 (7th Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977). *See also Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir.1983). A degree of flexibility has been introduced into this otherwise formidable statutory bar by way of a narrowly drawn judicial exception to the Anti-Injunction Act. An injunction may issue to enjoin the collection of taxes "if it is clear that under no circumstances could the Government ultimately prevail," and if equity jurisdiction otherwise exists. *Enochs, supra*, 370 U.S. at 7, 82 S.Ct. at 1129. *See also Laino v. United States*, 633 F.2d 626, 629 (2d Cir.1980).

In the instant action, plaintiffs' application for an injunction restraining the IRS from enforcing a levy on their personal bank account is clearly proscribed by the explicit language of the act and cannot be said to fall within the judicially created exception set forth in *Enochs, supra*. As noted by the Court of Appeals for this Circuit, later decisions reaffirming the *En-*

*ochs* two-pronged test have "characterized it as requiring that the Government's action be 'plainly without a legal basis' or have 'no chance of success on the merits.'" *Laino, supra,* 633 F.2d at 629, quoting *Bob Jones University,* 416 U.S. at 737, 745, 94 S.Ct. at 2046, 2050 (1974). Certainly that is not the situation here. The affidavits and documentation provided to the Court in connection with this motion indicate that the IRS took routine and authorized steps to collect the taxes owing. Timely assessments were made against plaintiffs for the tax years in question, the Secretary of the Treasurer sent plaintiffs notice and demand for payment, a notice of federal tax lien was filed with the County Clerk, Westchester County, and the IRS thereafter levied on plaintiffs' personal account to secure payment of the balances due. Indeed, plaintiffs' contention does not appear to be that the Commissioner's assessments are totally devoid of any factual or legal basis, but rather that the actions taken by Officer Paterno subsequent to the assessments were racially motivated.

Mindful of this Court's obligation to take "the view of the facts that is most liberal to the Commissioner, not to the taxpayer seeking injunctive relief," *Laino, supra,* 633 F.2d at 632, I cannot conclude that the Government would be unable to establish the validity of the assessments made. Nor can I conclude that the actions taken by the IRS to secure payment of these liabilities represents something other than "a good-faith effort to enforce the technical requirements of the tax laws...," *Bob Jones University, supra,* 416 U.S. at 740, 94 S.Ct. at 2047, absent which finding the Act bars the equitable relief sought.

■ The second prong of the *Enochs* test, requiring a showing that "equity jurisdiction otherwise exists (i.e., there is irreparable injury and the legal remedy is inadequate)," *McCarthy v. United States,* 563 F.Supp. 236, 240 (N.D.Ill.1983); *see also Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 313 (9th Cir.1982), is equally unavailing in the circumstances here. Although plaintiffs allege that the levy is "disruptive of [plaintiff's] business" (Am.Comp. ¶ 15), it has long been established that payment of the tax assessed followed by a suit for refund constitutes an adequate remedy at law, despite the financial hardships that may flow therefrom. *See Cool Fuel, supra,* 685 F.2d at 314 (fact that assessment or levy "would have a deleterious effect on [taxpayer's] business operations and credit rating" is an insufficient ground for equitable relief); *Zernial v. United States,* 714 F.2d 431, 434 (5th Cir.1983) (no irreparable injury where taxpayer asserted collection would leave him in severe financial straits, given well-established rule that "government's need for revenue justifies the use of summary procedures to collect money, followed by a later hearing."); *Donovan v. Maisel,* 559 F.Supp. 171, 174 (D.Del.1982) ("financial difficulties ... do not establish irreparable harm").

■ Plaintiffs' suggestion that the Supreme Court's decision in *Bivens v. Six Unknown Federal Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), provides an exception to the strictures of the Anti-Injunction Act in the circumstances alleged here is completely without merit. Plaintiffs have brought suit against the United States, the Commissioner of the IRS, and Officer Paterno, the latter two in their official capacities. While *Bivens* authorizes suits for monetary damages against federal officers in their individual capacities, it does not authorize a suit against the government or its agencies for injunctive or monetary relief. As recently noted by the Court of Appeals for this Circuit, "*Bivens*–type actions against the United States are ... routinely dismissed for lack of subject matter jurisdiction." *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.1983). *See also Sellers v. United States,* 569 F.Supp. 1149, 1154 (N.D.Ga. 1983) (rejecting taxpayer's *Bivens* claim on the ground that the "United States is absolutely immune from damages in a suit seeking damages under the Constitution, as is the Commissioner insofar as he was acting within the scope of his official capacity.").

Even if plaintiffs' complaint is liberally construed as asserting a *Bivens*-type damages claim directly against Revenue Officer Paterno, federal officials are entitled to the protection accorded them by the qualified "good faith" immunity doctrine. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Taylor v. Kavanagh*, 640 F.2d 450 (2d Cir.1981). As recently reiterated by the Supreme Court, "public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow, supra,* 457 U.S. at 806, 102 S.Ct. at 2732. The Court's opinion in *Harlow* makes clear its intention to bolster the good faith immunity defense by facilitating summary disposition of insubstantial constitutional claims against public officials. After reviewing the "objective" and "subjective" aspects of the immunity defense traditionally relied on by courts in defining the scope of the qualified immunity defense, the Court went on to observe that insistence on the subjective element—*i.e.,* whether an action was taken *"with the malicious intention* to cause a deprivation of constitutional rights"—has proved incompatible with the Court's determination that meritless claims should not proceed to trial. As stated in *Harlow:*

> "[A]n official's subjective good faith has been considered to be a question of fact that some courts have regarded as inherently requiring resolution by a jury.
>
> "In the context of *Butz* 's attempted balancing of competing values, it now is clear that substantial costs attend the litigation of the subjective good faith of government officials. Not only are there the general costs of subjecting officials to the risks of trial.... There are special costs to 'subjective' inquiries of this kind. Immunity generally is available only to officials performing discretionary functions. In contrast with the thought processes accompanying 'ministerial' tasks, the judgments surrounding discretionary action almost inevitably are influenced by the decisionmaker's experiences, values, and emotions....
>
> "Consistently with the balance at which we aimed in *Butz,* we conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 816–818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

In the instant action, plaintiffs' complaint is reducible to the core allegation that Revenue Officer Paterno's actions with respect to plaintiffs' tax liabilities were racially discriminatory. Officer Paterno has stated under oath that the steps he took were pursuant to authorized IRS collection procedures and were not racially motivated. Both he and two other individuals present during the May 13 phone call, one of whom is black, further aver that at no time did Officer Paterno make any racial comments to Dr. Davidson. Officer Paterno's explanation for the timing of the Citibank levy is fully supported by the affidavit of Revenue Officer Manolis. In response to these affidavits and the supporting documentation submitted on behalf of defendants, plaintiff simply reiterates the conclusory allegation that in a "rage of racial hatred [Officer Paterno] instituted a tax levy against my personal account...." (Pl. Answer at ¶ 2). I find plaintiffs' "bare allegation of malice," *Harlow,* 457 U.S. at 817, 102 S.Ct. at 2738, with respect to Officer Paterno's actions in this matter insufficient to circumvent the qualified immunity shield, as that doctrine has been construed by the Supreme Court in *Harlow.* In these circumstances, summary judgment dismissing the complaint is appropriate. *See also Contemporary Mission, Inc. v. U.S. Postal Service,* 648 F.2d 97, 107 (2d Cir.1981) (no trial warranted where "defendants pro-

duced affidavits setting forth reasonable grounds for their actions and, in addition, attested that they acted in good faith" and plaintiff responded "by reiterating its conclusory allegations of conspiracy").

### Conclusion

Having determined that defendants are entitled to summary judgment with respect Officer Paterno's allegedly discriminatory conduct, the predicate for any relief in this action, I need not address the other jurisdictional deficiencies in the pleadings. The Clerk of the Court is directed to dismiss the complaint with prejudice and without costs.

It is So Ordered.