**Branka PETRIE, Plaintiff,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Defendant.**

No. CV–S–88–74–PMP.

United States District Court, D. Nevada, Las Vegas Division.

April 5, 1988.

---

Branka Petrie, pro se.

Mark Fraase, Thomas Carlucci, Trial Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION & ORDER

PRO, District Judge.

In this action, BRANKA PETRIE ("Plaintiff"), appearing *pro se*, claims that the Commissioner of Internal Revenue ("Defendant") has unlawfully assessed and levied upon her wages, (specifically, her "toke envelopes" or tips), in an effort to collect allegedly delinquent federal income taxes.[1] On February 3, 1988, Plaintiff filed a Complaint and Motion for Preliminary

and Permanent Injunction (# 1), in which she asserts that the levy is invalid on various procedural grounds, and seeks to enjoin the IRS from enforcing the levy. On February 4, 1988, the Court denied Plaintiff's Application for Temporary Restraining Order (# 2), filed February 3, 1988. Defendant filed a Motion to Dismiss (# 5), and an Opposition to Motion for Preliminary Injunction (# 6), concurrently on February 11, 1988, to which Plaintiff filed an Opposition (# 7) on February 17, 1988.

The Court heard oral argument from both parties on February 18, 1988, at which time the Court instructed the parties to file affidavits and documents in connection with their respective positions. On February 23, 1988, Plaintiff filed an Affidavit and Statement of Financial Facts (# 10). Defendant filed the Declaration of Revenue Officer Magana (# 12), and a Supplemental Opposition to Motion for Preliminary Injunction (# 13), on February 25 and 29, 1988, respectively. Plaintiff filed an Affidavit in Opposition to Defendant's Supplemental Opposition (# 14) on March 9, 1988.

For the reasons discussed below, the Court must deny Plaintiff's Motion for Preliminary and Permanent Injunctive Relief.

## FACTUAL BACKGROUND

Plaintiff is employed at Caesar's Palace as a blackjack dealer. On April 5, 1984, a Statutory Notice of Deficiency (IRS Form 5601) was sent to Plaintiff, pursuant to 26 U.S.C. § 6212, stating that the Internal Revenue Service ("IRS") had determined a deficiency for the 1980 tax year. (# 13, Declaration of Joe Magana, ¶ 12, Exhibit D attached thereto.) Plaintiff did not file a petition contesting the assessment with the Tax Court, despite the fact that the Statutory Notice of Deficiency explicitly notified Plaintiff of her right to do so. In a letter dated May 10, 1984, Plaintiff acknowledged receipt of the notice of deficiency. (*Id.,*

---

1. Defendant has levied Plaintiff's "tokes" to recover tax delinquencies from the 1980 and 1981 tax years. Significantly, Plaintiff's allegations that the proper notice and demand procedures were not followed are.addressed solely towards the 1980 tax year. (# 1, ¶ 10(A)) Since Defendant has provided a well-documented record of

its levy for tax delinquencies for both tax years, the Court has perused the record, and it would appear that Defendant complied with the applicable provisions of the Internal Revenue Code regarding assessment and levy for both tax years.

¶ 13, Exhibit E attached thereto.) On August 3, 1984, a Second Notice of Delinquent Tax Account (IRS Form 4839) was sent to Plaintiff. (*Id.*, ¶ 15, Exhibit G attached thereto.) Attached to Defendant's Exhibit G is a letter from Plaintiff dated August 8, 1984 in which she denies any tax liability.

On September 11, 1984, pursuant to 26 U.S.C. § 6303, a Statement of Tax Due on Federal Tax Return (IRS Form 3552) indicating an assessment of $5,691.24 for income taxes due for the 1980 tax year was sent to Plaintiff.[2] (*Id.*, ¶ 16, Exhibit H attached thereto.) In a letter dated September 17, 1984, Plaintiff again denied any tax liability, and demanded an administrative hearing. (*Id.*, ¶ 17, Exhibit I attached thereto.)

Revenue Officer Stephen Harrison made a field call on Plaintiff on October 15, 1984 in an attempt to arrange for collection of the delinquent taxes. Plaintiff was apparently most uncooperative. (# 13, Declaration of Stephen Harrison, ¶ 5.)

Following a telephone call on October 30, 1984, at which time Plaintiff apologized for being so abrupt during Officer Harrison's field call, she requested an appointment concerning the delinquent taxes. On November 13, 1984, Plaintiff met with Officer Harrison at the local IRS district office, and Plaintiff demanded an administrative hearing. Officer Harrison informed that the time for filing a petition in Tax Court for the 1980 tax year had expired, and advised her that she could either pay the delinquent taxes and file a refund suit in federal district court, or face seizure of her assets and/or a levy on a her wages. (*Id*, ¶¶ 6, 7.)

While Officer Harrison recalls that he handed Plaintiff a Final Notice of Intention to Levy (IRS Letter 1058), Defendant is unable to produce a copy of such final notice. (*Id.*, ¶ 7.) Plaintiff then threatened to "have a rifle waiting" for Officer Harrison if he returned to her home. Following this incident, Officer Harrison completed an Assault or Threat of Assault Report (*Id.*, ¶¶ 7–8.)

A Notice of Levy on Wages, Salary, and Other Income (IRS Form 668–W) was served on Desert Palace, Inc., d/b/a Caesar's Palace, on December 21, 1984, to collect the delinquent federal tax liability of Plaintiff for the 1980 tax year. (*Id.*, ¶ 9, Exhibit K attached thereto.) On January 4, 1988, a Notice of Levy was served on the Caesar's Palace Casino "Toke Commit-

---

2. Title 26, United States Code, Section 6501(a) requires that an assessment must be made within three years after the tax return was filed; Title 26, United States Code, Section 6501(b)(1) provides that a tax return filed prior to the deadline (April 15 of the following calendar year) is deemed to have been filed on such deadline. Accordingly, while Plaintiff claims to have filed her tax return for the 1980 tax year in February 1981 (# 7, pp. 3–4), the applicable statute of limitations for tax year 1980 would, pursuant to 26 U.S.C. § 6501(b)(1), facially extend to April 15, 1984. As such, the assessment indicated by the Statement of Tax Due on Federal Tax Return appears, at first glance, untimely.

However, 26 U.S.C. § 6503(a), "Issuance of statutory notice of deficiency," provides in pertinent part as follows:

(1) General Rule.—The running of the period of limitations provided in section 6501 or 6502 ... on the making of assessments ... in respect of any deficiency ... shall (after the mailing of notice under section 6211(a)) be *suspended for the period during which the Secretary is prohibited from making the assessment or from collecting by levy or proceeding in court* (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), *and for 60 days thereafter."* (Emphasis added.)

Following the mailing of the Statutory Notice of Deficiency, the IRS is prohibited from making an assessment for 90 days (26 U.S.C. § 6213(a)) within which period the taxpayer may file a petition in Tax Court, and for 60 days thereafter. The unexpired portion of the statute of limitations provided by § 6501(a) is added to the suspension period. *Security Indus. Ins. Co. v. United States*, 830 F.2d 581, 582–83 (5th Cir. 1987); *Olds & Whipple, Inc. v. United States*, 22 F.S. 809, 812 (Cl.Ct.1938); *United States v. Markowitz*, 34 F.S. 827, 829–30 (N.D.Cal.1940).

Since the Statutory Notice of Deficiency was mailed on April 5, 1984 and the § 6503 statute of limitations expired on April 15, 1984, the unexpired portion was 10 days. Consequently, in this action, the IRS had 160 days from April 5, 1984 to assess the deficiency. (90 days, 26 U.S.C. § 6213(a), + 60 days, 26 U.S.C. § 6503(a)(1), + 10 days, unexpired portion of 26 U.S.C. § 6501(a), = 160 days.) The assessment made on September 11, 1984 occurred 159 days after the date of the Statutory Notice of

tee,"[3] in order to collect the delinquent taxes, in addition to the federal tax delinquencies of other Caesar's Palace employees. The members of the Toke Committee indicated their refusal to comply with the levy.

On January 15, 1988, United States Magistrate Lawrence Leavitt issued a Warrant for Entry, whereupon IRS agents entered Caesar's Palace Casino and seized tips belonging to Plaintiff, except for the daily exemption allowed pursuant to 26 U.S.C. § 6334(d). (# 5, Declaration [of Joe Magana], ¶ 8, Exhibits 3, 4 attached thereto.) On January 21, 1988, the Toke Committee informed the IRS that they would comply with the Notice of Levy served on January 4, 1988, at which time arrangements were made whereby tips subject to levy are being accumulated by the Toke Committee and paid to the IRS on a weekly basis. (*Id.*, ¶ 10).

## MOTION TO DISMISS DENIED:

### UNITED STATES NOT PROPER DEFENDANT AND SERVICE OF PROCESS NOT FATALLY DEFECTIVE

Defendant's Motion to Dismiss (# 5) is based on the assertion that the United States is the only proper party defendant, and that service of process is defective as violative of Fed.R.Civ.P. 4(c)(2)(A) and 4(d)(4) and/or (5). Defendant has simply misstated the law with regard to the first contention. Furthermore, the Court rejects the notion that failure to comply with Rule 4's technical requirements always requires dismissal of the action, and follows the Ninth Circuit in holding that such failure is excusable under the circumstances.

■ Defendant seeks to substitute the United States as the real party in interest and to dismiss this action due to improper service, pursuant to Fed.R.Civ.P. 12(b)(5). This contention is without merit. Far from being the real party in interest in this action, the United States waives sovereign immunity pursuant to 26 U.S.C. § 7422,

Deficiency on April 5, 1984. The assessment is, therefore, timely.

3. The "Toke Committee" at Caesar's Palace is comprised of selected dealers who are charged with collecting all "tokes" received by twenty-

"Civil actions for refund," only when "a claim for refund or credit has been duly filed with the [Treasury] Secretary, according to the provisions of law in that regard,...." 26 U.S.C. § 7422(a), "No suit prior to filing claim for refund"; *Matya v. United States*, 478 F.2d 330, 331–32 (8th Cir.1973) (quoting *Buck v. United States*, 466 F.2d 481, 483 (10th Cir.1972)); *Buck v. Dist. Director of Internal Revenue*, 369 F.Supp. 1281, 1282 (S.D.Tex.1973). Defendant cites 26 U.S.C. § 7422(c), "Suits against collection officer a bar," however, this provision is inapposite.

■ Defendant is quick to point out that technical defects in the service of process apply even if the Court determines that the Commissioner of Internal Revenue is the proper party defendant to this action (¶ 5, p. 3, n. 1). Defendant correctly asserts that under Fed.R.Civ.P. 4(d)(5), the United States must be properly served when an officer or agency of the United States is named as a party. Since as a matter of law the Commissioner, not the United States, is the proper defendant in this action, service of process is governed by Fed.R.Civ.P. 4(d)(5).

Pursuant to Fed.R.Civ.P. 4(d)(5), service of process upon an officer or agency of the United States is made "by serving the United States and sending a copy of the summons and of the complaint by registered or certified mail to such officer or agency." *Id.* The required service upon the United States is made

... by delivering a copy of the summons and of the complaint to the *United States attorney* for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States ... *and* by sending a copy of the summons and complaint by registered or certified mail to the *Attorney General* of the United States at Washington, District of Columbia. Fed.R.Civ.P. 4(d)(4) (emphasis added).

one dealers at Caesar's Palace over a 24-hour period, which they then divide equally among each qualified twenty-one dealer who worked during the 24-hour period.

The record reflects that Plaintiff personally served the Summons and Complaint upon the United States Attorney for the District of Nevada, and that a copy of the Summons and Complaint was served upon Defendant. There is no indication that the Attorney General has been served in any manner. Nevertheless, neither the United States Attorney for the District of Nevada nor Defendant deny receiving the Summons and Complaint in a timely manner. Indeed, the receipt of such notice has enabled Defendant to answer Plaintiff's Complaint and Motion for Injunctive Relief, and to participate in the proceedings before the Court.[4] Under the circumstances, therefore, Defendant cannot be heard to claim lack of proper notice of Plaintiff's action.[5]

In *Borzeka v. Heckler*, 739 F.2d 444 (9th Cir.1984), the Ninth Circuit was presented with precisely this same issue, and reversed the Nevada District Court which had dismissed a *pro se* complaint for failure to comply with the technical requirements of service under Rules 4(d)(4) and (5). In *Borzeka*, the Secretary of Health and Human Services, under circumstances virtually identical to those of this action, argued that when Rule 4(d)(5)'s personal service requirement has not been complied with, dismissal of the complaint is always required.

The Ninth Circuit panel rejected this argument, and adopted a test to ensure that *pro se* litigants do not lose their right to a hearing due to their ignorance of technical procedural requirements:

> We ... hold that failure to comply with Rule 4(d)(5)'s personal service requirement does not require dismissal of the complaint if (a) the party that had to be served personally received actual notice, (b) the defendant would suffer no prejudice from the defect in service, (c) there is a justifiable excuse for the failure to serve properly, and (d) the plaintiff would be severely prejudiced if his complaint were dismissed.

*Borzeka, supra*, at 447.

With regard to the third factor, the Ninth Circuit noted that "appellant was preceeding *pro se* when the defective service was made. We are generally more solicitous of the rights of *pro se* litigants, particularly when technical jurisdictional requirements are involved." *Id.* at 447, n. 2. *See also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

Defendant also calls the Court's attention to Plaintiff's failure to comply with the Rule 4(c)(2)(A) requirement that process be served by "any person *who is not a party* and is not less than 18 years of age." (Emphasis added.) There is, however, no evidence that such noncompliance prevented Defendant from receiving actual notice of this action, or has in any way been prejudiced. Accordingly, the Court applies the test adopted in *Borzeka* and denies Defendant's Motion to Dismiss (# 5).

---

4. The Court is cognizant of the Ninth Circuit's holding in *Allen v. Veterans Admin.*, 749 F.2d 1386, 1389 (9th Cir.1984), that service of a complaint upon an agency will not impute the necessary notice to the United States. The holding is not controlling of this action, however, since in *Allen*, the plaintiff mistakenly sued a federal agency instead of the United States under the Federal Tort Claims Act. Consequently, actual notice of the suit by the United States Attorney General was an absolute prerequisite to federal jurisdiction. Precisely the converse of *Allen* is presented by this action. The Commissioner, not the United States, is the proper defendant. Since the record clearly reflects that both the IRS and the United States Attorney for the District of Nevada received actual notice of this action, the real party defendant has received the benefit of Rule 4(d) notice.

5. The Court focuses here on the underlying purpose of the service of process requirements contained in the Federal Rules, as stated by Wright and Miller:

> The general attitute of the federal courts is that the provisions of Rule 4 should be liberally construed in the interest of doing substantial justice and that the propriety of service in each case should turn on its own facts within the limits of the flexibility provided by the rule itself. *This is consistent with the modern conception of service of process as primarily a notice-giving device.* In addition, the avoidance of dismissals for improper service has the desirable objective of promoting trials and the disposition of cases on their merits. 4A C. Wright & A. Miller, *Federal Practice & Procedure,* § 1083, at 10–11 (1987) (emphasis added) (footnotes omitted). *See also Williams v. General Services Admin.,* 582 F.Supp. 442 (E.D.PA 1984) (quoting Wright & Miller) (cited by Wright & Miller).

## ANTI–INJUNCTION ACT BARS FEDERAL JURISDICTION

█ Defendant moves to dismiss Plaintiff's motion for injunctive relief on the ground that this action is barred by the Anti–Injunction Act (the "Act"), contained in the Internal Revenue Code at 26 U.S.C. § 7421. The Act, with exceptions not relevant here,[6] provides in pertinent part as follows:

[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed. 26 U.S.C. § 7421(a).

The Act is strictly enforced. *See Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); *Maxfield v. United States Postal Service,* 752 F.2d 433, 434 (9th Cir.1984). The purpose of the Act, as articulated by the Supreme Court, is to protect the Government's "need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference and 'to require that the legal right to the disputed sums be determined in a suit for a refund.'" *Bob Jones, supra,* 416 U.S. at 736, 94 S.Ct. at 2046, quoting *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962).

Beyond the explicit statutory exceptions enumerated therein, a narrowly drawn judicial exception has been established. Injunctive relief may be had if the taxpayer can demonstrate that (1) under no circumstances can the government ultimately prevail; and (2) equity jurisdiction otherwise exists. *Enochs, supra,* at 7, 82 S.Ct. at 1129.

The Ninth Circuit has clearly applied this standard in *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 313–314 (9th Cir.1982). In *Cool Fuel,* the Ninth Circuit noted that:

Injunctive relief against the IRS is generally prohibited by the Anti–Injunction Act. 26 U.S.C. § 7421(a). Although Congress has recognized exceptions to the Anti–Injunction Act (in this case the exception carved out by § 6213 where statutory notice procedures have not been followed), neither the statute nor the legislative history says anything to support a contention that the usual equitable prerequisites to injunctive relief should not be required.

*Cool Fuel, supra,* at 313. The Ninth Circuit panel quoted the Supreme Court and held that an injunction should issue,

[o]nly where the intervention of a court of equity "is essential in order effectually to protect property rights against injuries otherwise irremediable." The [Supreme] Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies. *Id.* at 314, n. 1 (citations omitted).

## GOVERNMENT CAN ULTIMATELY PREVAIL ASSESSMENT AND LEVY PRESUMED PROPER

█ Later decisions reaffirming the first prong of the *Enochs* test have "characterized it as requiring that the Government's action be plainly without a legal basis 'or have no chance of success on the merits.'" *Laino v. United States,* 633 F.2d 626, 629 (2nd Cir.1980), quoting *Bob Jones University, supra,* 416 U.S. at 737, 745, 94 S.Ct. at 2046, 2050 (1974).

The Supreme Court addressed the question of what showing the government is required to make when a taxpayer claims that his case falls within the exceptional class which justifies equitable relief in *Commissioner v. Shapiro,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976).[7]

---

6. The exceptions are for suits in the Tax Court to contest deficiency notices, 26 U.S.C. §§ 6212(a), (c) (Supp.V, 1981); for a grace period after mailing of a deficiency notice, to permit suit in the Tax Court, 26 U.S.C. § 6213(a) (Supp.V, 1981); for a 30–day period, after filing of bond, to allow suit to contest assessment of a penalty, 26 U.S.C. § 6672(b) (Supp.V, 1981); for an extension of time of collection where a tax preparer pays 15 percent of an assessed penalty,

26 U.S.C. § 6694(c) (1976); for actions by persons other than the one against whom the taxes are assessed, 26 U.S.C. §§ 7426(a), (b)(1) (1976 & Supp.V, 1981); and for review of jeopardy assessments, 26 U.S.C. § 7429(b) (1976).

7. The facts of this action are not analogous to those of *Shapiro,* in which the Supreme Court held that the Act was inapplicable because the IRS had made no disclosure as to whether the

The Supreme Court declined to discuss the question in terms of burden of proof, but, as Judge (now Justice) Kennedy wrote for the Ninth Circuit panel in *Schildcrout v. McKeever,* 580 F.2d 994, 997 (1978), which applied the standard set forth in *Shapiro,* "it would appear that the burden of showing that the assessment is baseless remains on the taxpayer." [8]

The Ninth Circuit has reaffirmed the federal courts' obligation not to allow injunction suits to be used as a collateral mechanism for resolving issue of law or facts which may be disputed in good faith. *Schildcrout, supra,* at 998, citing *Enochs.* Moreover, it is well settled that the court is obligated to take the view of the facts that is most liberal to the IRS, not to the taxpayer seeking injunctive relief. *Id.,* quoting *Enochs* 370 U.S. at 7, 82 S.Ct. at 1129. Accordingly, based on the affidavits and IRS documents contained in the record, the Court cannot conclude that Defendants would be unable to establish the validity of the assessment and levy.[9] Nor can the Court conclude that the actions taken by the IRS to secure payment of these liabilities represent something other than "a good faith effort to enforce the technical requirements of the tax laws ...," *Bob Jones University, supra,* 416 U.S. at 740, 94 S.Ct. at 2047, in the absence of which the Act bars injunctive relief.

It is well established at law that the burden of proving that an assessment is erroneous rests with the alleged taxpayer in a refund suit. *United States v. Rexach,* 482 F.2d 10, 15–16 (1st Cir.1973), *cert. denied,* 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed. 2d 330 (1973). The consequence of a tax assessment is analogous to a court-entered judgment which has the presumption of administrative regularity, and by which governmental officers are deemed to have acted reasonably and according to law. *Bull v. United States,* 295 U.S. 247, 260, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935). In the excise tax area, the Supreme Court established the rule that proof of the making of an assessment was prima facie evidence of liability. *United States v. Rindskopf,* 105 U.S. (Otto) 418, 26 L.Ed. 1131 (1882). That an assessment is based on an IRS agent's erroneous view of the law or of the facts does not relieve the alleged taxpayer of the burden of establishing facts from which a proper determination can be made. *Roybark v. United States,* 218 F.2d 164 (9th Cir.1954); *United States v. Harris,* 216 F.2d 690 (5th Cir.1954).

In this action, the affidavits and documentation provided to the Court in connection with the Defendant's Motion in Opposition to Preliminary Injunction and the Supplemental Opposition (# 6, # 13, respectively) indicate that the IRS took routine and authorized steps to collect the delinquent tax liability. Timely assessments were made against Plaintiff, Plaintiff was sent notice and demand for payment, a notice of levy was made, and the IRS thereafter levied on Plaintiff's "tokes" to secure payment on the balance due. Consequently, Plaintiff cannot demonstrate that Defend-

---

assessment had a basis in fact and it further appeared that, because the taxpayer was being extradicted abroad, he would be irreparably injured because he would have no opportunity to later contest the validity of the assessment in the Tax Court or in a suit for a refund.

**8.** In *Shapiro,* the Supreme Court stated:

The Government may defeat a claim by the taxpayer that its assessment has no basis in fact—and therefore render applicable the Anti–Injunction Act—without resort of oral testimony and cross-examination. Affidavits are sufficient so long as they disclose basic facts from which it appears that the Government may prevail. The Constitution does not invariably require more, *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854 [43 L.Ed.2d 54] (1975); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893 [47 L.Ed.2d 18] (1976), and we would not

hold that it does where collection of the revenues is involved.

Finally, it seems apparent that if the facts do not even disclose "probable cause," *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 607, 95 S.Ct. 719, 723, 42 L.Ed.2d 751 (1975); *Gerstein v. Pugh, supra,* to support the assessment, the Government would certainly be unable to prevail at trial. Thus the [*Enochs*] standard is consistent with the applicable constitutional standard. 424 U.S. at 633, 96 S.Ct. at 1073.

**9.** Defendant addresses the four procedural deficiencies alleged by Plaintiff (# 6, p. 6–10). Defendant's examination of each allegation reveals, in the Court's opinion, that Plaintiff's claims regarding the alleged impropriety of the assessment and levy are unfounded.

ant cannot, under any circumstances, prevail on the merits.

## EQUITY JURISDICTION DOES NOT EXIST

The second prong of the *Enochs* test requires that Plaintiff demonstrate that equity jurisdiction otherwise exists (that there is "irreparable injury and lack of an adequate legal remedy"), *Cool Fuel, supra,* 685 F.2d 309, 313 (9th Cir.1982). Having failed to satisfy the first prong of the *Enochs* test, the Court need not consider whether Plaintiff can establish grounds for equitable relief. *Schildcrout v. McKeever,* 580 F.2d 994, 1000 (9th Cir.1978) (citing *United States v. American Friends Service Committee,* 419 U.S. 7, 11, 95 S.Ct. 13, 15, 42 L.Ed.2d 7 (1974) (per curiam); *Shannon v. United States,* 521 F.2d 56, 61 (9th Cir.1975), *cert. denied,* 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976).

Due to the importance of this action to Plaintiff's future, and to similarly situated taxpayers, however, the Court will consider whether, as a matter of law, Plaintiff can demonstrate the existence of equitable jurisdiction.

## LEGAL REMEDY AVAILABLE

■ Plaintiff asserts that the only legal remedy available, a refund suit which would require that she first pay in full the amount assessed against her, *see Flora v. United States,* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), is inadequate because she is financially unable to "pay first and litigate later." *Id.* at 168, 80 S.Ct. at 642. Moreover, she asserts that if the IRS were to continue to levy her "tokes," she would be unable to support her mother and two children, and thereby suffer irreparable harm. (# 10, ¶¶ 22–27)

Plaintiff's claim of inadequate legal remedy based on hardship is not unique. In *Bob Jones University, supra,* the petitioner sought to enjoin the Government's revocation of the petitioner's tax exempt status. The petitioner contended "that forcing it to meet the standards of [the Act and *Enochs* ] would deny it due process of law in light of the irreparable injury it will suffer pending resort to alternative procedures for review and of the alleged inadequacies of those remedies at law." 416 U.S. at 746, 94 S.Ct. at 2050.

The Supreme Court held that the opportunity to petition the Tax Court, or, subsequently, for a refund suit, "offer petitioner a *full, albeit delayed,* opportunity to litigate the legality of the [IRS's] revocation of tax-exempt status, ..." *Id.,* at 747, 94 S.Ct. at 2051 (emphasis added). Consequently, the petitioner's request for injunctive relief was denied under the *Enochs* standard.[10]

Accepting Plaintiff's contentions are true, *arguendo,* and acknowledging that no court could regard with enthusiasm the prospect of a family's economic privation, if not devastation, the Court must nevertheless view the adequacy of Plaintiff's legal remedy in the light of all the remedies afforded by the Internal Revenue Code. From this perspective, it is vital that Plaintiff failed to exhaust her legal remedies by failing to petition the Tax Court for a redetermination of the assessment. *See* 26 U.S.C. § 6213. Unlike a refund suit, a petition under § 6213 allows the taxpayer to litigate first and pay, if necessary, later. Plaintiff has failed to explain why she chose not to follow this avenue of relief. Under these circumstances, Plaintiff cannot be heard to complain she lacks an adequate remedy at law.

---

**10.** The Supreme Court elaborated, as follows: We do not say that these avenues of review are the best that can be devised. They present serious problems of delay, during which the flow of donations to an organization will be impaired and in some cases perhaps even terminated. But, as the [IRS] and a party challenging the [IRS's] actions are not susceptible of instant resolution through litigation. And although the congressional restriction to post-enforcement review may place an orga-

nization claiming tax-exempt status in a *precarious financial position,* the problems presented do not rise to the level of constitutional infirmities, in light of the *powerful governmental interests in protecting the administration of the tax system from premature judicial interference, and of the opportunities for review that are available.* 416 U.S. at 748, 94 S.Ct. at 2051 (citations omitted) (emphasis added).

The weight of precedent supports the notion that taxpayers who—like Plaintiff—failed to file a timely petition before the Tax Court for preassessment relief have been held unable to satisfy the prerequisites to equity jurisdiction necessary to overcome the barrier of the Act. In *Shapiro, supra,* in which the taxpayer sought injunctive relief while his petition before the Tax Court was still pending, the Supreme Court noted that:

> If, on remand, the District Court concludes that the absence of a remedy at law at this time is due to [taxpayer's] failure to pursue that remedy, then equity will not intervene and the complaint should be dismissed. *The inadequacy of his legal remedy would then be due to his own choice not to pursue it.* 424 U.S. at 634, n. 15, 96 S.Ct. at 1074, n. 15 (emphasis added).

Likewise, in *Alexander v. "Americans United" Inc.,* 416 U.S. 752, 762, n. 13, 94 S.Ct. 2053, 2059, n. 13, 40 L.Ed.2d 518 (1974), the Supreme Court noted that, "A taxpayer cannot render an available review procedure an inadequate remedy at law by voluntarily foregoing it." *See also Laino v. United States,* 633 F.2d 626, 630 (2nd Cir.1980), citing *inter alia, Walker v. Internal Revenue Service,* 333 F.2d 768, 771 (9th Cir.1964), *cert. denied,* 380 U.S. 926, 85 S.Ct. 910, 13 L.Ed.2d 811 (1965); *Boren v. Riddell,* 56–2 U.S.T.C. ¶ 9883 (S.D.Cal. 1956), aff'd, 241 F.2d 670 (9th Cir.1957).

This Court bases its conclusion that Plaintiff's failure to petition the Tax Court pursuant to § 6213 is dispositive of this action in part on the legislative history of that provision.[11]

In light of the legislative history and in deference to the statutory scheme created by Congress, this Court arrives at the same conclusion reached, after an exhaustive analysis, by the Second Circuit in *Laino, supra.* The availability of a stay pending the final decision of the Tax Court was keenly observed by the Second Circuit panel in *Laino* as follows:

> Thus it appears that the potential difficulty inherent in a refund suit, the very hardship of which [taxpayers] complain here, was an evil which Congress sought to overcome not by dissolving the bar of the Anti–Injunction Act altogether, but by providing for pre-payment review of the Commissioner's determination. *The exception to the Act which accompanied this legislative solution was a limited one,* designed solely to protect the taxpayer's right to seek Tax Court review before paying any assessment. *It would be a patent violation of this legislative plan were we to encourage taxpayers to spurn redetermination by the Tax Court and to come instead into equity complaining of the hardship of a refund suit.* (Citing *Flora v. United States,* 362 U.S. 145, 80 S.Ct. 630 (1960), noting in footnotes: "Our conclusion that [taxpayers] inexcusably bypassed an adequate legal remedy makes it unnecessary to determine whether in the circumstances of this case, a refund suit afforded them another adequate remedy at law." (Emphasis added.) 633 F.2d 626, 631, n. 4.

Plaintiff's Complaint and Request for Injunctive Relief appears partly based on an assertion that she not meet the standards

11. H.Rep. No. 179, 68th Cong., 1st Sess. 7 (1924), reprinted in Cum.Bull. 1939–1, Pt. 2, at 246–47, quoted in *Laino, supra,* 633 F.2d at 631, provides in pertinent part:

> The [House of Representatives] Committee recommends the establishment of a Board of Tax Appeals [now the Tax Court] to which a taxpayer may appeal prior to the payment of an additional assessment of income, excess-profits, war-profits, or estate taxes. Although a taxpayer may, after payment of his tax, bring suit for the recovery thereof and thus secure a judicial determination on the questions involved, he cannot, in view of [the Anti–Injunction Act], which prohibits suits to enjoin the collection of taxes, secure such a

determination prior to the payment of the tax. The right of appeal after payment of the tax is an incomplete remedy, and does little to remove the hardship occasioned by an incorrect assessment.

Subsequent to this recommendation, Congress modified the predecessor of § 6213, by inserting a narrow exception to the Anti–Injunction Act, which permitted injunctive relief to restrain the IRS from assessing or collecting a tax before the mailing of a notice of deficiency, before the expiration of the period for filing a Tax Court petition, or if a petition were filed, before the decision of the Tax Court became final. Revenue Act of 1928, 45 Stat. 791, 852, cited at *Id.*

of the Act because she has had no administrative hearing prior to the levy, and that she has thereby been deprived of her right to procedural due process. (# 7, p. 6; # 10, ¶ 19) No hearing is required prior to the assessment or collection of taxes so long as the taxpayer has an adequate opportunity for later judicial determination of liability. *O'Connor v. United States*, 669 F.Supp. 317, 322 (D.Nev.1987), citing *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 595, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931); *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1434 (9th Cir. 1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986); *Tavares v. United States*, 491 F.2d 725 (9th Cir.1974), *cert.* denied, 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975).[12]

## NO IRREPARABLE HARM DEMONSTRATED

■ Plaintiff's Affidavit and Statement of Financial Facts (# 10, ¶¶ 22–27) indicates the toll which the levy on her tokes wreaks upon her financial and familial obligations. Nevertheless, a taxpayer's inability to pay a tax, coupled with the availability of the post-collection refund remedy is not a basis for invoking equity jurisdiction to attack a tax assessment or levy. This is the very basis of the long established "pay and sue" rule. *Wood v. Sargeant*, 694 F.2d 1159, 1161 (9th Cir.1982), quoting *Westgate–California Corp. v. United States*, 496 F.2d 839, 843 (9th Cir.1974), "It is settled that a suit to enjoin the assessment or collection of taxes, in spite of § 7421(a), 'may not be entertained merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise.' quoting *Enochs.*"[13]

There is long-standing Ninth Circuit precedent that payment of the tax assessed followed by a suit for refund constitutes an adequate remedy at law, despite the financial hardships that may flow therefrom. In *Monge v. Smyth*, 229 F.2d 361, 366–67 (9th Cir.1956), *cert. denied*, 351 U.S. 976, 76 S.Ct. 1055, 100 L.Ed. 1493 (1956), the taxpayer's suit against the IRS to enjoin assessment and collection of deficiencies in federal income taxes was dismissed when the Ninth Circuit panel held that the taxpayer's showing was insufficient to establish that the assessment was arbitrary and oppressive:

One is led by a reading of the transcript to be sympathetic with the predicament and straitened circumstances in which the enforcement of the collection of the tax places this aged and infirm taxpayer. But *hardship to the taxpayer does not warrant injunctive relief.* [footnote: "Hardship in raising money with which to pay taxes is now common to all taxpayers, but this is not a special circumstance conferring equity jurisdiction on the courts to prevent collection by injunctive process. (Citaions omitted.)"] Attempt is made to make it appear that the taxing agencies have been overbearing and heartless in enforcing collection of this tax, but it must not be overlooked

---

**12.** Following the Supreme Court's lead in *Phillips, supra,* as well as in *Fuentes v. Shevin*, 407 U.S. 67, 90–92, 92 S.Ct. 1983, 1999–2000, 32 L.Ed.2d 556 (1972), the Ninth Circuit has repeatedly upheld the constitutionality of levy prior to judicial review. *Bomher v. Reagan*, 522 F.2d 1201·(9th Cir.1975); *United States v. Heck*, 499 F.2d 778, 792 (9th Cir.1974); *Tavares v. United States*, 491 F.2d 725 (9th Cir.1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975).

**13.** The financial difficulties which plaintiff may encounter pending a refund suit, do not establish irreparable harm. In *Sampson v. Murray*, 415 U.S. 61, 92, n. 68, 94 S.Ct. 937, 953, n. 68, 39 L.Ed.2d 166 (1974), an action was brought by a probationary federal employee for declaration that her discharge was invalid and for an injunction restraining termination of her employment. Writing for the majority, Justice Rehnquist maintained that even the most severe financial loss is insufficient to constitute irreparable injury:

We recognize that cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found. Such extraordinary cases are hard to define in advance of their occurrence. We have held that *insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees are not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however, severely they may affect a particular individual.* (Emphasis added.)

that they are merely performing a duty, the omission to perform which would result in censure—particularly if inaction resulted in loss to the Government.

... The refunding provisions [of the Internal Revenue Act] provide the taxpayer may recover all he pays if he does not owe the taxes. *Since any wrong he suffers may be remedied by a money consideration a denial of an injunction does not work irreparable injury.* (Citations omitted) (Emphasis added).

The Court is cognizant of the recent Ninth Circuit decision in *Jensen v. I.R.S.,* 835 F.2d 196 (9th Cir.1987), which overruled the Nevada District Court's dismissal of a taxpayer's complaint contesting a levy on his wages. In *Jensen,* both the IRS and the district court treated the taxpayer's allegations that the IRS failed to comply with the pre-levy notice requirements of §§ 6212(a) and 6213(a) as true, and the district court made no findings. Accordingly, the Ninth Circuit issued an injunction enjoining further levies on taxpayer's wages pending proceedings by the district court to determine whether the IRS had in fact complied with the notice requirements.

The Ninth Circuit panel did not base its decision on the prospect of alleged irreparable financial harm to the taxpayer. Instead, an injunction was issued due to

... the alleged failure by the IRS to give Jensen notice of the deficiency deprived him of his opportunity to challenge the claimed deficiency in the tax court without having to pay the tax. (Citation.) This deprivation of the opportunity to litigate before paying the tax can cause substantial hardship to a taxpayer. 835 F.2d 196, 198 (9th Cir.1987).

Moreover, in a footnote to this statement, the court noted:

The court is aware that monetary harm does not usually establish irreparable harm in analyzing equitable grounds for injunctive relief. (Citing *Sampson v. Murray, supra,*) This case, however, includes allegations not only of severe monetary deprivation, but loss of a valuable administrative remedy as well. *Id.,* at 199, n. 2.

In addition, the Ninth Circuit noted that if the taxpayer's claim regarding his financial situation were true,

... the levy on his wages caused him more than monetary harm. It deprived Jensen of the ability to provide necessities of life for himself and family. *Cf. Lopez v. Heckler,* 713 F.2d 1432, 1436–38 (9th Cir.) (distinguishing deprivation of the necessities of life from monetary harm compensable at a later time), rev'd in part on other grounds, 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983).

However, the distinction between monetary harm and deprivation of life's necessities drawn in *Lopez v. Heckler,* cited *supra,* is not controlling in the context of assessment and levy of tax delinquencies. In *Lopez,* the Ninth Circuit panel appropriately issued a preliminary injunction requiring the restoration of Social Security disability benefits to a defined class of recipients in light of the clear public policy behind the federal statute mandating such payments. In contrast, the public policy in favor of expeditious assessment and collection of taxes with a minimum of pre-enforcement judicial interference, as enunciated by the Supreme Court in *Enochs* and *Bob Jones University, supra,* is diametrically opposed to the Social Security Act analyzed in *Lopez.*

In sum, any taxpayer embroiled in a dispute with the IRS concerning collection of tax delinquencies, inevitably contends, as does Plaintiff, that she will suffer irreparable injury pending resort to available procedures for review. If the taxpayer has failed to avail herself of the available pre-collection legal remedies, however, even when the interim financial consequences appear most draconian, the federal courts are precluded from ordering injunctive relief.[14]

14. In *Zernial v. United States,* 714 F.2d 431 (5th Cir.1983), the taxpayer attempted to establish irreparable injury by asserting that he suffered from diabetes and had only recently been employed, and that the IRS levy would not leave him with enough money to buy medicine. The Fifth Circuit was unimpressed:

[Taxpayer's] only claim that the IRS is not entitled to the money, however, is grounded in procedural due process. It is well estab-

## CONCLUSION

In this action, Plaintiff has failed to overcome the strict prohibition against suits for injunctive relief codified in the Anti–Injunction Act, 26 U.S.C. § 7421(a). Plaintiff has failed to meet her burden of proving that (1) the Government cannot, under any circumstances, prevail on the merits; (2) she has no legal remedy; and (3) she will suffer irreparable harm if injunctive relief is not granted.

IT IS THEREFORE ORDERED that Plaintiff's Complaint and Motion for Preliminary and Permanent Injunction (# 1) is dismissed and denied.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss (# 5) is denied.

lished that the government's need for revenue justified the use of summary procedures to collect money, followed by a later hearing on the seizure. *Phillips v. Commissioner,* 283 U.S. 589, 595, 51 S.Ct. 608, 611 [75 L.Ed. 1289] (1931). [Taxpayer's] due process rights are adequately protected by his right to sue for a refund under 26 U.S.C. § 7422 (1976 & Supp.V 1981). Since he has not shown that the IRS cannot possibly recover, [taxpayer] cannot claim the benefit of *Enochs,* and the Anti–Injunction Act bars his suit for injunctive relief. 714 F.2d 431, 434 (5th Cir.1983).